2006 UT App 45

**STATE of Utah, Plaintiff and Appellee,**

v.

**Salvador TORRES–GARCIA, Defendant and Appellant.**

**No. 20040815–CA.**

Court of Appeals of Utah.

Feb. 16, 2006.

Lori J. Seppi, David P. Mack, and Brennon L. Fuelling, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

ORME, Judge:

¶1 Defendant Salvador Torres–Garcia appeals his conviction of one count of murder, a first degree felony. *See* Utah Code Ann. § 76–5–203 (2003). He argues that the trial court erred by refusing to grant his motion for a continuance. We agree that the denial of the motion was erroneous, and we reverse Defendant's conviction and remand the case for a new trial.

## BACKGROUND

¶2 On September 23, 2003, Clara Irwin contacted a drug dealer and requested a delivery of cocaine to the hotel room in which she and her husband, Todd Irwin, were staying. During the delivery, the drug runner left several baggies of heroin in the Irwins' hotel room to avoid the potential discovery of the drugs by a police officer that the runner had seen in the area. Mr. Irwin later met the drug runner at a nearby gas station to return the heroin. But when the two could not agree upon the amount of cocaine Mr.

Irwin should receive for the heroin's safe return, he retained the heroin and returned to the hotel room. Fifteen minutes after Mr. Irwin's return, several men entered the hotel room and, in the presence of Ms. Irwin, assaulted, shot, and killed him.

¶ 3 Ms. Irwin, sleep-deprived and having recently indulged her drug addiction, was interviewed by the police after the shooting. Because of her physical state, she would periodically "nod off" during this initial interview. Then, during subsequent interviews— one at the police station later that evening and another held several weeks later—many details recounted were inconsistent with her initial statement. So, although Ms. Irwin picked Defendant out of a photo array and identified him at a lineup, her testimony about who actually shot her husband was far from impenetrable because of her inconsistent interview responses.

¶ 4 Defendant was charged with murder and, in preparing his case, he filed discovery requests for identification of all expert witnesses that the State planned to use in prosecuting him. On April 15, 2004—almost two months after the preliminary hearing—the State filed a Notice of Expert Witnesses, stating its intention to use Craig Watson, the Assistant Chief Investigator for the District Attorney, as an expert witness to "testify concerning drug trafficking." The certificate of delivery attached to the notice, however, verified that it was mailed to an attorney other than the one representing Defendant.

¶ 5 Apparently, then, the earliest that Defendant's trial counsel was actually made aware that the State planned to use Watson as an expert witness was during a hearing held Thursday, May 20, 2004—five days before the trial was set to commence. The following Monday, Defendant raised the lack of notice issue at a motion hearing. The trial court determined that the State had not complied with the notice requirements of Utah Code section 77–17–13 and determined that Defendant was entitled to a continuance. *See* Utah Code Ann. § 77–17–13(1), (4)(a) (2003). Rather than see the trial continued, the State opted to go forward with the trial,

expressly representing it would forgo the use of Watson as an expert witness.

¶ 6 The trial commenced the following day, Tuesday, May 25. That morning, the State filed a motion asking the trial court to reconsider its ruling regarding the State's use of Watson as an expert, arguing that he met the exception specified in subsection 6 of the statute as recently amended.[1] The trial court ultimately agreed with the State, which prompted Defendant to again request a continuance, but this time the trial court denied the request. However, the court ordered that Watson could not testify until the second day of trial so that defense counsel would have an opportunity to interview Watson prior to his in-court testimony. With this minimal limitation in place, the trial then proceeded as scheduled.

¶ 7 During opening statements and during the examination of witnesses, defense counsel heavily emphasized the inconsistencies in Ms. Irwin's various accounts of the shooting. For example, her testimony varied regarding what Mr. Irwin requested—money or drugs—as payment for the heroin's return, who drove the car used in fleeing the crime, and the name of the shooter. Defense counsel especially highlighted these inconsistencies during the cross-examination of Ms. Irwin, which took place on the first day of trial and well before defense counsel had any opportunity to talk with Watson.

¶ 8 On the second day of trial, the State called Watson as its final witness. Watson, as an expert witness regarding drug trafficking, was able to explain away many of the inconsistencies in Ms. Irwin's testimony— inconsistencies upon which the defense was so heavily relying to undermine her testimony. Watson testified that drug dealers often use monetary amounts to refer to quantities of drugs, that drug dealers usually have many cars and their runners do not consistently use the same cars, and that drug dealers use frequently changing nicknames in communicating with their customers. Watson's testimony provided compelling ex-

---

1. Subsection 6 was added to section 77–17–13 by an amendment that became effective on May 5, 2003. *See* Utah Code Ann. § 77–17–13 amendment notes (2003).

planations for many of the apparent inconsistencies in Ms. Irwin's testimony.

¶ 9 The jury returned a guilty verdict on May 28, 2004, and Defendant was later sentenced to prison. Defendant then filed this appeal.

## ISSUE AND STANDARD OF REVIEW

 ¶ 10 Defendant argues that the trial court improperly denied his renewed motion for a continuance. "The decision to grant or deny a requested continuance lies within the broad discretion of the trial court, and we will not disturb such a decision absent a clear abuse of discretion." *State v. Begishe,* 937 P.2d 527, 530 (Utah Ct.App.1997). *Accord State v. Cabututan,* 861 P.2d 408, 413 (Utah 1993). Further, it is necessary in establishing such an abuse of discretion to show that Defendant was prejudiced by the denial, since "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R.Crim. P. 30(a). Thus, we will only reverse when our "review of the record persuades [us] that without the error there was a reasonable likelihood of a more favorable result for the defendant." *State v. Knight,* 734 P.2d 913, 919 (Utah 1987) (internal quotations, citations, and emphasis omitted).

## ANALYSIS

 ¶ 11 Utah Code section 77–17–13 governs the notice requirements applicable to expert testimony. *See* Utah Code Ann. § 77–17–13 (2003). Under this section, a party that intends to call an expert witness to testify at trial is generally required to give notice to the opposing party "not less than 30 days before trial." *Id.* § 77–17–13(1)(a). Such notice must include the expert's name, address, curriculum vitae, and either the expert's written report, a written explanation of the proposed testimony, or notice that the expert is available for consultation upon rea-

sonable notice. *See id.* § 77–17–13(1)(b). When a party does not "substantially comply" with the notice requirements, the other party is "entitled to a continuance ... sufficient to allow preparation to meet the testimony" if such continuance is "necessary to prevent substantial prejudice." *Id.* § 77–17–13(4)(a).

¶ 12 The State argues, however, that its use of Watson as an expert comes within an exception found in subsection 6—which applies to state employees used as expert witnesses—and, therefore, that only informal notice was required. *See id.* § 77–17–13(6). Subsection 6 requires only that the opposing party be "on reasonable notice through general discovery that the expert may be called as a witness at trial, and the witness is made available to cooperatively consult with the opposing party upon reasonable notice." *Id.* The State contends, and the trial court concluded when this subsection was belatedly called to its attention, that the conditions for this less formal notice were met here.

¶ 13 The State's recast argument presents a "square peg in a round hole" dilemma. Despite its belated reliance on the "general discovery" exception of subsection 6, the State had actually attempted to give specific notice under subsection 1, providing Watson's name, address, and curriculum vitae.[2] The certificate of mailing, however, shows that the notice was not sent to Defendant's counsel, but rather to a different attorney at a different address. While the State contends that the notice was also sent to Defendant's counsel, and that it had a paralegal ready to testify to that effect, defense counsel maintained that he never received the notice. Thus, whether the notice was sent to Defendant's counsel or not, it appears that Defendant first actually learned of the State's intention to use Watson's expert testimony from a comment the State made during

2. While the State was actually attempting to fulfill the more formal notice requirements of subsection 1, it is unclear whether this was because of the State's belief that subsection 1 was applicable, an abundance of caution on the State's part, or simply an unawareness of the newly added subsection 6. Notwithstanding the State's attempt to comply with the formal notice requirements of subsection 1, the trial court found the notice deficient under that subsection. It determined that some of the required information was revealed to the defense only a few days before trial and that such notice "does not give [Defendant] sufficient time to prepare."

the hearing held five days before trial.[3]

¶ 14 As concerns notice pursuant to subsection 6, it appears that the only "general discovery" the State can point to as meeting that subsection's "reasonable notice" requirement is the problematic Notice of Expert Witnesses that the State attempted to send to Defendant's counsel several weeks before trial. Utah Code Ann. § 77–17–13(6). Moreover, there is no indication Watson was ever "made available to cooperatively consult" with Defendant's counsel until the trial had started. *Id.*

¶ 15 But whether the trial court was correct in holding that subsection 6 controlled is, ultimately, unimportant given the unique circumstances of this case, and we express no opinion on this determination. For regardless of whether subsection 6 applied, the peculiar facts of the instant case still required the trial court to grant a continuance, and its failure to do so was an abuse of discretion.

¶ 16 The essence of the trial court's error is that it initially ruled one way on the use of Watson as an expert witness, prompting an important concession by the State, and then reversed itself on the morning trial began. The trial court should have recognized that this "false start" lulled Defendant into a state of understandable complacency as concerns giving any pretrial attention to Watson's expert testimony. The court should have granted the renewed request for a continuance to ensure that the entire burden of the State's late assertion of its subsection 6 argument—and the trial court's belated acceptance of the argument—did not fall on Defendant.

¶ 17 Thus, given the court's initial ruling that notice was insufficient and the State's agreement not to use Watson as an expert, the real problem here was that Defendant

had no reason, in the key preparation days immediately before trial, to think Watson's expert testimony would be used at trial nor any motive to prepare to meet the testimony. "Clearly the statute's notice requirement contemplates that a party be able to adequately prepare to meet adverse expert testimony." *State v. Arellano,* 964 P.2d 1167, 1170 (Utah Ct.App.1998). Rule 16 of the Utah Rules of Criminal Procedure, which governs discovery, also contemplates such an opportunity for preparation. *See* Utah R.Crim. P. 16(a)(5) (requiring the State to disclose to the defendant any item of evidence needed "in order for the defendant to adequately prepare his defense"); Utah R.Crim. P. 16(g) (providing for the grant of a continuance when a party is not furnished the required evidence). When a trial court's pretrial ruling means that an expert witness will not testify and then, at the outset of trial, the court modifies its decision and allows the witness to testify as an expert, a continuance may well be required if requested.

■ ¶ 18 We must determine if the circumstances here are such that a continuance was necessary.

In reviewing the denial of appellant's request for continuance or other relief, we consider four factors: (1) the extent of appellant's diligence in his efforts to ready his defense prior to the date set for trial; (2) the likelihood that the *need* for a continuance could have been met if the continuance had been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the appellant might have suffered harm as a result of the court's denial.

*State v. Begishe,* 937 P.2d 527, 530 (Utah Ct.App.1997) (emphasis in original) (footnote omitted).

---

3. The State, relying on a comment made by the trial court that "the State has in fact submitted notice of the expert testimony," argues that the trial court found that the notice had in fact been sent to Defendant's counsel. It appears, however, that this particular statement actually referenced the notice submitted to the court, which *was* submitted in a timely manner and thus indicates that the State was not acting in bad faith. But for purposes of notice to Defendant, the court focused on whether such notice was actually received. Highlighting defense counsel's contention that the notice was never received and the insufficient time he had to prepare to address Watson's testimony after its first mention five days before trial, the court noted: "If the defense is stating it on the record, I can only take in good faith their statements that they did not receive sufficient information as the rule requires to determine what this expert testimony is."

¶ 19 As to the first factor, Defendant was diligent in his trial preparation. Prior to trial, Defendant objected to the testimony in question and would have been granted a continuance but for the State agreeing to forgo its use of Watson's expert testimony. Defendant had no reason to prepare to meet Watson's testimony because Defendant had every assurance such testimony would not be used. *Cf. Arellano,* 964 P.2d at 1171 (stating "it is not defendant's duty to anticipate and prepare for all potential, yet undisclosed, expert witnesses"). "Nor was the last minute development of this significant evidence something that [Defendant's] counsel could reasonably have anticipated." *Begishe,* 937 P.2d at 531. Indeed, Defendant's renewed request for a continuance and lack of pretrial preparation to meet Watson's testimony was ultimately caused by the State's last-minute argument, raised the morning of trial, regarding the subsection 6 exception.

¶ 20 Turning to the second factor, the continuance was needed to allow Defendant's counsel time to incorporate the additional adverse testimony into his trial strategy. "A continuance would have both provided [D]efendant more time to prepare to challenge [Watson's] testimony and allowed him to consult with his own expert and then incorporate any new information into the defense strategy." *Arellano,* 964 P.2d at 1171. Instead, Defendant's counsel was required to go forward with his opening statement and the cross-examination of several witnesses that very morning, using his previously developed trial strategy and largely focusing on the inconsistencies in Ms. Irwin's testimony. Although it is somewhat doubtful Defendant could have procured a witness to contradict the explanations about drug trafficking advanced by Watson, defense counsel still should have been allowed adequate time to prepare to meet the testimony in other ways—for example, by attacking Watson's qualifications or, more productively, reorganizing the defense strategy so it did not so greatly hinge on the apparent discrepancies in Ms. Irwin's testimony that were rather thoroughly explained away by Watson.

¶ 21 As to the third factor, of course a continuance is an inconvenience to the other participants in the trial. But "any inconvenience to the State caused by a continuance would have been fully justified" because, as discussed above, it was the State's last-minute argument that created the need for the continuance. *Begishe,* 937 P.2d at 530–31. And while "[t]he court and jury may have been inconvenienced to an extent, ... [Defendant's] right to a fair trial outweighs this administrative concern." *Id.* at 531.

¶ 22 With respect to the fourth factor, Defendant was sufficiently prejudiced by the denial of his second request for a continuance to warrant a new trial. Statements made by Defendant's counsel during opening statements—before counsel had any opportunity to learn what Watson's expert testimony would be—were undercut by Watson's testimony, which counsel, before trial, had every reason to suppose would not be permitted. Under these circumstances, "[i]t is likely defense counsel's credibility in the eyes of the jury was greatly compromised by the prosecution's [introduction of Watson's expert testimony]." *Id.*

¶ 23 The court's initial ruling in favor of Defendant—that he would be allowed a continuance if Watson was to be used as an expert—followed by the court's reconsideration and reversal of its ruling on the first morning of trial, required a continuance. It was unreasonable for the court to deny Defendant's renewed continuance motion and, instead, order that Watson's proposed testimony be evaluated sometime during the evening of the first day of trial. " 'The effective administration of justice requires that discoverable evidence be provided much sooner than "moments" before trial,' much less during the course of trial." *Id.* at 532 (citation omitted). Such last-minute evaluation of expert testimony "precluded [Defendant] from formulating a trial strategy best calculated to address the totality of the State's case." *Id.* at 531. Under these circumstances, the district court "at a minimum was required to grant a continuance of reasonable duration," and its failure to do so was a clear abuse of discretion. *Id.* at 532.[4]

4. Defendant also argues that the trial court abused its discretion and violated rule 404(b) of

## CONCLUSION

¶ 24 The trial court abused its discretion by denying the request for a continuance after modifying its ruling on the morning of trial and admitting expert testimony that Defendant was previously assured would not be admitted. Thus, we reverse Defendant's conviction and remand for a new trial.

¶ 25 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and JAMES Z. DAVIS, Judge.

the Utah Rules of Evidence by admitting certain drug and weapon evidence. *See* Utah R. Evid. 404(b). Given the outcome of our decision on the continuance issue, we need not evaluate the evidentiary question. But because this second issue is likely to be raised again upon remand, we will briefly address it here in the interest of judicial economy. *See State v. Cloud,* 722 P.2d 750, 755 (Utah 1986).

The trial court found that the drug and weapon evidence at issue was "probative for the non-character purposes of proving identity, intent, plan, preparation and lack of accident"—all specific exceptions to the rule 404 prohibition against evidence of other bad acts. *See* Utah R. Evid. 404(b). We do not see any error in this determination. Nor can we say the evidence is irrelevant or unfairly prejudicial, especially considering the limited use made of the evidence

and the limiting instruction given to the jury to that effect. *See* Utah R. Evid. 402 ("Evidence which is not relevant is not admissible."); Utah R. Evid. 403 (providing relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

Further, although Defendant, in an attempt to avoid emphasizing the evidence to the jury, requested that a limiting instruction not be used, the judge's decision to include such an instruction was proper. "It is the duty of the judge to instruct the jury on relevant law. Accordingly, the judge may, over the objection of the defendant's counsel, give any instruction that is in proper form, states the law correctly, and does not prejudice the defendant." *State v. Hansen,* 734 P.2d 421, 428 (Utah 1986). Such was the instruction here, and giving it was entirely appropriate.