2006 UT App 238

**STATE of Utah, Plaintiff and Appellee,**

v.

**Wesley Ray RICHARDSON, Defendant and Appellant.**

No. 20050159–CA.

Court of Appeals of Utah.

June 15, 2006.

Cleve J. Hatch, Roosevelt, for Appellant.

Mark L. Shurtleff, Attorney General, and Christopher D. Ballard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and ORME.[1]

---

1. Judge Orme, having heard oral argument but having thereafter recused himself, does not participate in the court's decision.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Wesley Ray Richardson appeals his conviction for escape, a third degree felony. *See* Utah Code Ann. § 76–8–309 (Supp.2005). We reverse and remand to the district court to vacate Defendant's conviction.[2]

## BACKGROUND

¶ 2 In May 2004, Defendant was on parole from a charge of failing to respond to an officer's signal to stop. Sometime in May, while still on parole, Defendant pleaded guilty to a class A misdemeanor charge for driving under the influence (DUI). When Defendant's parole officer learned of Defendant's DUI conviction, he issued a seventy-two hour detainer to hold Defendant in jail.

¶ 3 Defendant's parole officer then met with Defendant and offered him the option of either participating in the Halfway Back Program or having a parole revocation hearing. Defendant chose the Halfway Back Program and signed a waiver acknowledging his parole violation, waiving his parole revocation hearing, and agreeing to abide by the terms of the Halfway Back Program.

¶ 4 As a participant in the Halfway Back Program, Defendant agreed to serve ninety days at the Uintah County Jail with work release. According to the terms of Defendant's work release, each day Defendant was to be released from the Uintah County Jail at 5:00 a.m. and was to return to the jail by 10:00 p.m. Defendant's parole officer considered Defendant to be on parole while participating in the Halfway Back Program. According to Defendant's parole officer, if Defendant had successfully completed the Halfway Back Program, then he would have been "released to street supervision and continued on parole." Defendant's parole officer further explained that Defendant "never lost parole" while he participated in the Halfway Back Program.

¶ 5 Still, as a participant in the Halfway Back Program, Defendant also explicitly agreed to "comply with all rules and regulations of the Uintah County Jail." The Uintah County Jail officers considered Defendant to be incarcerated in the jail pursuant to a contract with the state prison.

¶ 6 On May 26, 2004, Defendant was released from the Uintah County Jail for work release. That night, he failed to return to the Uintah County Jail by 10:00 p.m. as required by the terms of his work release. Around 11:30 p.m., Defendant's girlfriend called the Uintah County Jail and stated that she and Defendant had a flat tire, but that they were on their way back to the jail. However, Defendant did not return to the jail that night. In fact, Defendant never returned to the Uintah County Jail.

¶ 7 Police arrested Defendant in June 2004 and charged him with one count of escape, a third degree felony, under Utah Code section 76–8–309. *See* Utah Code Ann. § 76–8–309. At a preliminary hearing in early September 2004, the magistrate gave both parties additional time to brief the issue of whether section 76–8–309 applied to Defendant's conduct. On November 10, 2004, the trial court held a hearing and issued a written ruling explaining that section 76–8–309 indeed applied to Defendant's conduct.

¶ 8 A jury convicted Defendant as charged on November 15, 2004. On January 24, 2005, the trial court sentenced Defendant to zero to five years in the Utah State prison. This sentence was to run consecutively to the sentence Defendant was currently serving. Defendant appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 9 On appeal, Defendant asserts that the trial court erred when it ruled that pursuant to Utah Code section 76–8–309, Defendant could be convicted of escape even though Defendant was on parole when he allegedly escaped from the Uintah County Jail. *See* Utah Code Ann. § 76–8–309. This is an issue of statutory interpretation, which presents "a question of law we review on appeal for correctness." *State v. Schofield,* 2002 UT 132, ¶ 6, 63 P.3d 667.

---

**2.** We reverse on other grounds and therefore do not reach Defendant's claim that we should reverse his conviction because the record fails to indicate he was properly arraigned.

## ANALYSIS

¶ 10 Defendant asserts that the trial court erred in ruling that he could be convicted of escape, pursuant to Utah Code section 76–8–309 (the Escape Statute), even though he was on parole at the time of his alleged offense. *See* Utah Code Ann. § 76–8–309. This is a matter of first impression for this court.

¶ 11 The Escape Statute states that "[a] prisoner is guilty of escape if he leaves official custody without lawful authorization." *Id.* § 76–8–309(1)(a)(i). The Escape Statute goes on to define "official custody" as:

[A]rrest, whether with or without warrant, or confinement in a state prison, jail, institution for secure confinement of juvenile offenders, or any confinement pursuant to an order of the court or sentenced and committed and the sentence has not been terminated or voided *or the prisoner is not on parole.*

*Id.* § 76–8–309(4)(c) (emphasis added). The Escape Statute also states that "[a] person is considered confined in the state prison if he: (i) without authority fails to return to his place of confinement from work release or home visit by the time designated for return." *Id.* § 76–8–309(4)(c)(i).

¶ 12 The trial court ruled that Defendant "could be considered confined in the state prison if he without authority failed to return to the Uintah County [J]ail." The trial court reasoned that although Defendant was on parole during his stay at the Uintah County Jail, his parole status was "only to allow enrollment in the Halfway Back Program." It further reasoned that because Defendant was "not released from custody," he was not "on parole" as that term is used in the Escape Statute. We disagree.

¶ 13 In interpreting the meaning of "official custody" as defined in the Escape Statute, we acknowledge the well-settled principle of statutory construction that we must "first look to the plain language of the statute." *State v. Germonto,* 2003 UT App 217,¶ 7, 73 P.3d 978. When interpreting the plain language of a particular statute, "courts presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." *Id.* (quotations and citation omitted).

¶ 14 Under the plain language of the Escape Statute's definition of official custody, official custody applies only to "prisoner[s] . . . not on parole." Utah Code Ann. § 76–8–309(4)(c). It is undisputed that Defendant was on parole and participating in the Halfway Back Program during his stay at the Uintah County Jail.[3] Defendant's parole status was never revoked, and Defendant's parole officer testified that Defendant continued on parole while participating in the Halfway Back Program.

¶ 15 The State argues that the Utah Legislature must have used the term parole to mean that an offender is free from physical custody and not simply designated as on parole by the Board of Pardons. Otherwise, a parolee could simply flee confinement in a state prison or jail because of that person's parole status. Such a consequence, the State maintains, causes a plain reading of the statute to lead to an absurd result. *See Savage v. Utah Youth Vill.,* 2004 UT 102,¶ 18, 104 P.3d 1242 ("A[ ] . . . well-settled caveat to the plain meaning rule states that a court should not follow the literal language of a statute if its plain meaning works an absurd result."). We disagree.

¶ 16 The State's conclusion fails to contemplate the Board of Pardon's authority. When a person is on parole, that person is subject to the jurisdiction of the Board of Pardons. *See* Utah Code Ann. § 77–27–5 (2003). Pursuant to this jurisdiction, the Board of Pardons has its own authority to set forth conditions of parole. *See id.* § 77–27–5(1)(a). When a parolee fails to comply with the requirements of parole, the Board of Pardons also has the authority to set its own sanctions, including the revocation of parole.

---

3. The State argues that courts should focus on the defendant's location, not the defendant's status, in determining whether the defendant was in official custody. We do not agree that a defendant's location trumps his or her status. In Utah's rural areas, there may be no separate facilities for residential programs. Thus, it is county jails that often contract to house these programs.

*See* Utah Code Ann. § 77–27–11(1), (6) (2003).

¶ 17 A parolee cannot simply flee confinement in a state prison or jail, because the Board of Pardons can issue sanctions to any parolee who violated parole, including revoking that person's parole status and sending that person back to prison or jail. *See id.* Because Defendant's parole status subjects him to the jurisdiction of the Board of Pardons, his failure to return to the Uintah County Jail, resulting in his failure to complete the Halfway Back Program, is an issue exclusively for the Board of Pardons. In sum, we read the Escape Statute's definition of official custody to mean that prisoners on parole are excluded from the Escape Statute's reach.[4]

## CONCLUSION

¶ 18 The Escape Statute specifically provides that a person on parole cannot be held under official custody. Therefore, because Defendant was on parole when he failed to return to the Uintah County Jail as required by the Halfway Back Program, he cannot be convicted under the Escape Statute.[5] Accordingly, we reverse and remand for the trial court to vacate Defendant's conviction for escape.

¶ 19 I CONCUR: JAMES Z. DAVIS, Judge.

4. In 2004, the Utah Legislature repealed Utah Code section 76–8–309.5, which provided that "[a]n offender absconds from a facility when he: (a) leaves the facility without permission; or (b) fails to return at a prescribed time." Utah Code Ann. § 76–8–309.5 (2003). Section 76–8–309.5 defined a facility as "a residential facility owned, operated, leased, or contracted by the Department of Corrections or a county to provide housing, programming, or treatment of individuals who have been placed on parole." *Id.* We consider the legislature's revocation of the absconding statute to indicate its intention to eliminate the creation of a new crime when a parolee violates his or her probation, and to leave the punishment for such violations to the discretion of the Board of Pardons.

5. Because we order the trial court to vacate Defendant's conviction, we do not address other issues raised by Defendant on appeal.