**2018 UT App 68**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROBERT ALONZO PERAZA,
Appellant.

Opinion
No. 20160302-CA
Filed April 19, 2018

Fourth District Court, Provo Department
The Honorable Darold J. McDade
No. 131402387

Douglas J. Thompson and Margaret P. Lindsay,
Attorneys for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
JILL M. POHLMAN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1 Robert Alonzo Peraza appeals his conviction of four counts of sodomy on a child (Child). Peraza's trial was continued twice because the State did not provide all relevant discovery in time for defense counsel to prepare a defense and to procure an expert witness for impeachment purposes. Then, thirty-two days before trial, the State filed a notice of expert witness to rebut Peraza's anticipated defense. The notice disclosed the name and address of the expert (Expert), her curriculum vitae, a one-sentence description of the nature of her testimony, and a list of citations to more than 130 articles upon which Expert would rely; the notice did not include an expert report.

¶2　We are asked to determine whether the State sufficiently complied with the notice requirements under Utah Code section 77-17-13 and, if not, whether the district court erred in admitting Expert's testimony under rule 702 of the Utah Rules of Evidence. We are also asked to determine whether, based on the lack of expert report, Peraza's third motion for a continuance should have been granted. We conclude the district court exceeded its discretion when it denied the motion to continue after erroneously deciding to allow Expert to testify. The State's notice did not comply with section 77-17-13, depriving the court of the information necessary to rule on the admissibility of Expert's testimony under rule 702. The State also failed to meet its burden of demonstrating that Peraza would not be prejudiced by the denial of his motion. Peraza was entitled to a continuance so that he could prepare to respond to Expert's testimony. We therefore vacate Peraza's convictions and remand for a new trial.[1]

## BACKGROUND

### *The Allegations*

¶3　Peraza was charged with four counts of first-degree sodomy on a child[2] after Child accused him of sexually abusing her.[3]

---

1. Peraza also filed a motion for a rule 23B remand "for findings necessary to determine ineffective assistance of counsel." *See* Utah R. App. P. 23B. Because we vacate Peraza's convictions and remand for a new trial on other grounds, we need not address Peraza's motion or consider his claims that his counsel was ineffective. *See State v. Richardson*, 2006 UT App 238, ¶ 1 n.2, 139 P.3d 278.

2. Peraza was also charged with one count of first-degree aggravated sexual abuse of a child, but the State dismissed the charge after closing arguments and it is not an issue on appeal.

3. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly.

(continued…)

¶4     Child informed her mother (Mother) and her grandfather that Peraza did "bad things" to her that she "did not like." During an interview at the Children's Justice Center (CJC), Child told a social worker that Peraza did something to her that happens "when parents really love each other." Child explained that Peraza showed her his "pee pee," and made her use a hand gesture while she touched it, and he forced her to touch it with her mouth. She said he forced her to do this more than once.

¶5     After the first CJC interview, Child moved to California to live with her father, and after relocating to California she began therapy. Part of her treatment was to, "make effigy dolls, and . . . kill the effigy doll named [Peraza]." Eventually, Child disclosed that a second perpetrator may have also sexually abused her, and she made and "killed" effigy dolls of that person too.

¶6     Child's descriptions of the abuse varied over time. On some occasions, she was explicit in describing the acts Peraza had her perform, including descriptions of anal penetration; at other times she recanted what she had described. While she was living with Mother in Utah, Child wrote Mother a note asserting that the abuse did not happen. After she moved to California, Child called Mother, more than once, to say that Peraza did not do anything to her. She also told a private investigator that Peraza did not touch her and that she never touched him.

¶7     But at trial, Child withdrew her recantations and testified that Peraza sexually abused her. She also provided more detail when describing the abuse than she had done in previous interviews and therapy sessions. For example, at trial, she testified that "Peraza had put his penis in her vagina"; that testimony was the first time the prosecutor and defense counsel had heard that allegation.

---

(…continued)
We present conflicting evidence only as necessary to understand issues raised on appeal." *Mackin v. State*, 2016 UT 47, ¶ 2 n.1, 387 P.3d 986 (quotation simplified).

*Pretrial Proceedings*

¶8      Peraza's trial was first scheduled for March 2015. But the district court granted Peraza's motion for a continuance based on newly disclosed "evidence warranting additional investigation"—including a sexual assault nurse examination report; Child's second interview with someone at a CJC in California; and the State's indication of its "intent to have [Child's therapist] testify at trial." The court set a pretrial hearing in April to schedule a new trial date. During that hearing, defense counsel argued, based on arguments made in Peraza's motions supporting his motion for a continuance, that trial could not be scheduled because the State still had not produced the requested evidence, the therapist had not provided Child's therapy records, and these records had not been subjected to an in camera review.[4] The court determined it would postpone scheduling a trial until further evidence had been disclosed.

---

4. "In camera" means "[i]n the judge's private chambers" or "[i]n the courtroom with all spectators excluded." *In Camera*, Black's Law Dictionary (9th ed. 2009). Rule 506 of the Utah Rules of Evidence "cloaks in privilege confidential communications between a patient and her therapist in matters regarding treatment." *State v. Blake*, 2002 UT 113, ¶ 18, 63 P.3d 56. An exception to this rule applies if an otherwise privileged communication is "'relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which that condition is an element of any claim or defense.'" *Id*. (quoting Utah R. Evid. 506(d)(1)). If a party resists disclosure of the physician-patient communications, "the defendant must petition for an in camera review in which the [district] court will review the records to determine if they actually contain material that is relevant and ought to be disclosed." *State v. Otterson*, 2010 UT App 388, ¶ 5, 246 P.3d 168. This review may be conducted "only if the defendant shows with reasonable certainty that exculpatory evidence exists which would be favorable to [the] defense." *Id*. (quotation simplified).

¶9    In June 2015, the district court issued a subpoena duces tecum for Child's therapy records, and the State stipulated to an in camera review of those records. By August, the court still had not received Child's therapy records, but the therapist indicated she was reviewing them to redact information not relevant to the case. Relying on this, the court scheduled trial for October 2015. Then in late September, after receiving the records and defense counsel's request for information from the records, the court informed the parties it would provide the redacted records "by the end of [the] week."

¶10    Although trial was set for the end of October 2015, defense counsel requested another continuance because he had learned that a private investigator recorded one of Child's recantations. Counsel also explained that he needed more time to secure Child's therapist as a fact witness "for impeachment purposes" because of Child's recantations. The State agreed that given the circumstances, "it'd be better to continue the trial" and stated that it was also "look[ing] at re-filing" a notice of expert witness based on Child's therapy records. The court commented that it did not "know that [it] ha[d] any choice" and continued the trial to February 2016 with a final pretrial conference scheduled for late January.

¶11    During the January pretrial conference, the State stipulated to the introduction of Child's therapy records for impeachment purposes because defense counsel was unable to procure Child's therapist as a witness at trial. Peraza also challenged whether Expert should be allowed to testify. The court agreed to hear oral argument on Peraza's objection the following week, on January 28, 2016—twelve days before trial.

¶12    During the hearing, defense counsel argued that the State's notice of expert witness was inadequate because it did not include an expert report or any written explanation that would inform the court "exactly what this expert would be testifying to." The notice provided Expert's name and address, her curriculum vitae, and a list of more than 130 articles that she would be relying upon. The notice also included a one-sentence statement that the State intended to use Expert to present

evidence of the "methodology and science related to forensic interviewing of suspected child sex abuse victims" and related to "child disclosures of sex abuse including identified factors related [to] delayed, partial and gradual disclosures and recantations." But counsel asserted that he could not get access to the articles cited, because the medical journals in which they were published required readers to pay for a subscription. And without an expert report, defense counsel argued that all he had been provided were "topics" that could be related to Expert's testimony. Further, he argued,

> What's troubling to me is, I don't know if those are case notes that talk about possible theories, which if they're just theories, that would be argument, and the state is clearly allowed to argue. But to present evidence of this nature, I think implies a statistical analysis. And the case law that was cited in my objection . . . ha[s] already said that [our courts] disfavor this type of testimony, because . . . it implies there's a scientific . . . [and] statistical basis for it, but yet there isn't an actual statistical basis for [the theories].

He asked the court "to incorporate the objection that [was] filed" in response to the State's initial notice of expert when the State sought to admit Child's therapist's testimony. This written objection, based on Utah Code section 77-17-13 and rules 702 and 403 of the Utah Rules of Evidence, discussed the prejudicial effects of expert witnesses testifying to "statistical evidence of matters not susceptible to quantitative analysis" and pointed out that the Utah Supreme Court had determined in *State v. Rammel*, 721 P.2d 498 (Utah 1986), that "statistically valid probabilities evidence that focuses the jury's attention on 'a seemingly scientific, numerical conclusion'" should be excluded. *Id.* at 501.

¶13   The State handed the court a copy of defense counsel's previous written objection, then explained that the purpose of Expert's testimony was to rebut the defense's assumed strategy

of showing "that [Child] changed her testimony over time, [and] at one point that there was a recantation." Moreover, it did not intend "to have [Expert] say that [Child] is telling the truth or lying, but to simply explain to the jury that there are circumstances" where children "with confirmed histories of sexual abuse" have expressed "denial or hesitation" in their disclosures of the abuse.

¶14 Defense counsel countered that "with no doubt, we will be presenting evidence that [Child] has recanted both to her mother and also [to] a private investigator." But he argued that without a report from Expert, the State's notice did not provide sufficient information with respect to Expert's proposed testimony to allow the defense to adequately prepare to rebut her testimony. Further, he argued that it appeared Expert's testimony would relate only to "possibilities" for why Child recanted and that to have "an expert testify about them without a scientific basis, is concerning because it gives more weight to the state's arguments than maybe it should." Defense counsel added that, if Expert were to mention the "possibility that there are repressed memories," such references are prohibited by Utah Supreme Court precedent, and while they may be "valuable in the therapeutic setting . . . they're too prejudicial and not allowed in a forensic setting."[5]

---

5. This argument was further supported by Utah case law cited in Peraza's motion to exclude Child's therapist as an expert witness, which he incorporated into his motion with respect to Expert. For example, Peraza cited *State v. Rammel*, 721 P.2d 498 (Utah 1986), in which a detective drew on his experiences and provided anecdotal data to support his conclusions that "there was a high statistical probability" that a witness lied to the police in his first interview. *Id*. at 501. The Utah Supreme Court determined that the detective failed to show that the anecdotal data from which he drew his conclusions had any statistical validity or that the data established the detective as an expert. *Id*. It also determined that the detective's testimony stating that

(continued…)

¶15    At the conclusion of the hearing, the district court determined that Expert would be allowed to testify at trial if the State determined her testimony was necessary for rebuttal. It told the parties, based on its assumption of what Expert would testify to, Expert was qualified because "according to the rules of evidence, this person would meet the criteria for being an expert even [though] . . . none of us can really tell until we get to the testimony . . . whether or not [Expert is] going to be needed [for rebuttal]."

¶16    Later that day, after the State "provide[d] some" of the articles on which Expert would rely, the court held a telephone conference to address defense counsel's motion to continue the trial in light of the court's decision to allow Expert to testify. The State's disclosure led defense counsel to consult a social worker from the Salt Lake Legal Defender Association to help prepare a defense strategy with respect to Expert's testimony. Counsel requested, once again, a continuance to allow him to procure an

---

(…continued)
"there was a high statistical probability" that another witness lied should have been excluded because "its potential for prejudice substantially outweighed its probative value." *Id*. The supreme court explained that "[e]ven where statistically valid probability evidence has been presented . . . courts have routinely excluded it when the evidence invites the jury to focus upon a seemingly scientific, numerical conclusion rather than to analyze the evidence before it and decide where truth lies." *Id*. And "[p]robabilities cannot conclusively establish that a single event did or did not occur and are particularly inappropriate when used to establish facts not susceptible to quantitative analysis, such as whether a particular individual is telling the truth at any given time." *Id*. (quotation simplified). Peraza used *Rammel* and other cases to support his argument that "proposed testimony linking [Child's] symptoms and behavior to behavioral norms testimony is presumptively unreliable and prejudicial . . . and inadmissible as expert witness evidence under Rule 403."

expert to rebut that testimony. He explained that he felt further obligated to make this request because of the therapy treatments Child received—specifically, killing the effigy dolls of her alleged abusers—"could give grounds for the recantation of the recantation . . . [and] might have led to the allegations becoming much more violent and much more pronounced as the years have gone on." The State responded that although it was "unhappy with the fact that we're continuing again" but understood the basis for it. Nevertheless, the court stated that it was "not inclined" to continue the trial and that it had to "draw the line somewhere." After denying the motion to continue, the court "recognize[d] this might be something that could be used later" on appeal, but determined "this [was] too late in the game."

*The Trial*

¶17 The following week, the case proceeded to trial. During the State's case-in-chief, Child testified to the nature of the abuse she allegedly suffered from Peraza, beginning when she was six years old. She also testified that she lied to Mother and the private investigator when she said the abuse did not occur.

¶18 The State also called Mother, who testified that Child recanted her allegations to her and to the private investigator. Mother testified that Child recanted her allegations more than once. Defense counsel called the private investigator, who testified about his interview with Child in which Child recanted her allegations.

¶19 In an effort to rebut Mother's and the private investigator's testimonies that Child had recanted her allegations on different occasions, the State called Expert to testify about disclosures and recantations by victims of sexual abuse. Defense counsel objected to Expert's testimony on the ground that she was not a "rebuttal witness" because "the evidence about [Child] recanting her statements came out in the [S]tate's case." Defense counsel added that it was the State that introduced Child's interview in which Child recanted her allegations against Peraza, and as such, Expert's testimony could not be characterized as a

rebuttal. The court overruled the objection and allowed Expert to testify.

¶20　Expert explained she was "trained as a forensic interviewer" and that she had provided "supporting research citations" for the "areas of inquiry for expert testimony." She said that the articles identified in the notice were "articles that [she had] read, and so, the topics that would be contained in some of those different articles" were information "that [she] felt" allowed her "to testify as an expert." But Expert did not interview or assess Child. She had not reviewed any evidence of the case before testifying and answered questions "based off of the testimony [she] heard, since [she had not] seen transcripts or anything." Expert acknowledged her testimony was only "academic."

¶21　Expert testified she had conducted around 1,900 forensic interviews with children and that recanting is "not something that happens in all cases, as far as some of the research says," and that recantations can "var[y] between four percent to 20 percent of cases, so it's not something that's typical, but it's not unheard of." She reiterated that "generally, because a child recants does not mean that it did not occur" and commented,

> Sometimes, when a child recants, it may be feeling pressure from family members. . . . [O]ften times if it's someone that they love, having gone to jail, or if the person's no longer in the home, and now the family is struggling for money, sometimes those are circumstances where the child might think, "things were not like this before I talked about it, I'll just—it's just better to go back to how things were, I can deal with that."

¶22　The jury convicted Peraza on all four counts of sodomy upon a child. Peraza appeals his convictions.

ISSUES AND STANDARDS OF REVIEW

¶23    Peraza contends the district court erred when it admitted Expert's testimony at trial because the State had not provided sufficient information to demonstrate the scientific validity or basis of the testimony that would have allowed the court to determine whether she met the requirements for expert testimony under rule 702 of the Utah Rules of Evidence.[6] Specifically, Peraza argues that the State did not provide "any

---

6. Peraza also contends the district court erred when it permitted the jury to review the video of the CJC interview during deliberations. This argument is unpreserved. Generally, "an appellant must properly preserve an issue in the district court before it will be reviewed on appeal." *State v. Houston*, 2015 UT 40, ¶ 19, 353 P.3d 55 (quotation simplified). To preserve an issue, it must have been presented "in such a way that the court ha[d] an opportunity to rule on [it]." *Id.* (quotation simplified). There are limited exceptions to the preservation rule, including instances of plain error or exceptional circumstances—neither of which are argued by Peraza on appeal. *See id*.

    Although this argument is unpreserved, we briefly address this issue to avoid its recurrence on remand. Rule 17 of the Utah Rules of Criminal Procedure allows the jurors to "take with them the instructions of the court and all exhibits which have been received as evidence, except exhibits that should not, in the opinion of the court, be in the possession of the jury." In *State v. Carter*, 888 P.2d 629 (Utah 1995), s*uperseded by statute as stated in Archuleta v. Galetka*, 2011 UT 73, 267 P.3d 232, the Utah Supreme Court determined that rule 17 "indicates that exhibits which are testimonial in nature should not be given to the jury during its deliberations." *Id*. at 643. After Peraza's trial, this court determined in another case that video recordings of CJC interviews are recorded testimony and should not be given to the jury during deliberations. *State v. Cruz*, 2016 UT App 234, ¶¶ 37–41, 387 P.3d 618. Accordingly, on remand the district court should not provide any testimonial evidence to the jury during its deliberations.

details about what [Expert's] testimony would be so that the defense could investigate whether such testimony could be supported by" the more than 130 article citations Expert provided. The district court "has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard." *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794 (quotation simplified). "[W]e will not reverse a decision to admit or exclude expert testimony unless the decision exceeds the limits of reasonability." *Id.* (quotation simplified). Even if we determine the testimony was erroneously admitted, the defendant must show that the error was prejudicial. *State v. Iorg*, 801 P.2d 938, 941 (Utah Ct. App. 1990).

¶24    Peraza also contends that the district court's denial of his third motion to continue the trial to allow him to procure an expert witness to rebut Expert's testimony constituted an abuse of discretion and prejudiced his trial. We review the grant or denial of a motion to continue under an abuse of discretion standard. *State v. Tolano*, 2001 UT App 37, ¶ 5, 19 P.3d 400.

ANALYSIS

I. Expert Witness Testimony

¶25    Peraza contends the district court exceeded its discretion by admitting Expert's testimony without fulfilling its gatekeeping role under rule 702 of the Utah Rules of Evidence. He argues the court "failed to examine whether [Expert's] testimony and opinions were based upon principles and methods that were reliable, that they were based upon sufficient facts or data, and had been reliably applied to the facts" of this case.

¶26    Rule 702 provides that a witness may testify as an expert if that person "is qualified as an expert by knowledge, skill, experience, training, or education" and "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."

Utah R. Evid. 702(a). An expert's "scientific, technical, or other specialized knowledge" must meet "a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." *Id.* R. 702(b). This threshold showing "is satisfied if the underlying principles or methods, including the sufficiency of facts or data and the manner of their application to the facts of the case, are generally accepted by the relevant expert community." *Id.* R. 702(c).

¶27   District courts are assigned the duty of "gatekeeper" and are responsible for preventing the admission of unreliable expert testimony. *State v. Jones*, 2015 UT 19, ¶ 21, 345 P.3d 1195. Even if the testimony satisfies rule 702, the court must also "determine whether the proffered scientific evidence will be more probative than prejudicial as required by rule 403 of the Utah Rules of Evidence." *State v. Crosby*, 927 P.2d 638, 641 (Utah 1996).

¶28   A party that intends to call an expert to testify at trial must demonstrate that the expert meets the requirements of rule 702. Utah Code Ann. § 77-17-13(1)(a) (LexisNexis 2017);[7] *see also State v. Torres-Garcia*, 2006 UT App 45, ¶ 11, 131 P.3d 292 (explaining the notice requirements under section 77-17-13). In criminal cases, the first step involves giving notice to the opposing party "not less than 30 days before trial or 10 days before the hearing." Utah Code Ann. § 77-17-13(1)(a). The notice "shall include the name and address of the expert, the expert's curriculum vitae," and either "a copy of the expert's report," "a written explanation of the expert's proposed testimony sufficient to give the opposing party adequate notice to prepare to meet the testimony," or "a notice that the expert is available to cooperatively consult with the opposing party on reasonable

---

7. Recent amendments to the relevant statutes cited within this opinion are not substantive and do not affect the outcome of this appeal. We therefore refer to the most recent edition of the Utah Code for convenience. *See State v. Rackham*, 2016 UT App 167, ¶ 9 n.3, 381 P.3d 1161.

notice." *Id.* § 77-17-13(1)(b). If the party seeking to admit expert testimony "fails to substantially comply with the requirements of this section, the opposing party shall, if necessary to prevent substantial prejudice, be entitled to a continuance of the trial or hearing sufficient to allow preparation to meet the testimony." *Id.* § 77-17-13(4)(a).

¶29   Here, thirty-two days before trial, the State filed a notice of expert testimony with a copy of Expert's curriculum vitae and a list of medical journal articles that she would rely upon for her testimony. The articles were not readily accessible to the court or to defense counsel because they were published in journals for which subscriptions were required.

¶30   Peraza argues the district court had no basis for determining that rule 702 was satisfied because "the court had no idea what [Expert's] testimony was going to be . . . what her opinions or conclusions were based upon . . . [or whether her] methods and principles had been reliably applied to the facts in this case."[8] We agree.

¶31   In determining that Expert was qualified under rule 702, the district court relied solely on her curriculum vitae, the list of article citations, and the State's "oral assertions about why it wanted to call [Expert]." There was no information from which to determine the principles or methods that would form the basis of Expert's testimony, or whether her opinions were based upon sufficient facts or data. *See* Utah R. Evid. 702(b). The State did not provide an expert report, gave only a single-sentence description of the broad subject upon which Expert would testify, and failed to provide meaningful access to the articles upon which Expert relied. We agree with Peraza that neither the court nor defense counsel had "any idea what [Expert's] testimony would be or what scientific basis it [was] based upon."

---

8. At trial, Expert testified she had not read the transcripts of interviews, had not reviewed any material involving the case, and had not interviewed Child or any other witness.

¶32    We therefore conclude the district court exceeded its discretion when it admitted Expert's testimony at trial without complying with the requirements of rule 702.

¶33    Having made that determination, "we must separately determine whether the error was prejudicial." *State v. Stefaniak*, 900 P.2d 1094, 1096 (Utah Ct. App. 1995). "If there is a reasonable likelihood that, absent the error, there would have been a more favorable result for the defendant, then his conviction must be reversed." *State v. Iorg*, 801 P.2d 938, 941 (Utah Ct. App. 1990).

¶34    Peraza argues that the improper admission of Expert's testimony constitutes reversible error because of "its [prejudicial] effect of bolstering [Child's] trial testimony." We agree.

¶35    In *State v. Rammel*, 721 P.2d 498 (Utah 1986), the district court admitted a detective's testimony stating that, "[b]ased on his experience interviewing several hundred criminal suspects," it was not "unusual for [a suspect] to lie" when first interrogated. *Id.* at 500. The district court determined that the detective "was an expert apparently qualified to testify on [a suspect's] capacity for telling the truth" as a witness in a criminal case. *Id.* Although our supreme court concluded that the testimony was inadmissible because it "did not relate to [the suspect-witness's] character for veracity, but instead invited the jury to draw inferences about [the suspect-witness's] character based upon [the detective's] past experience with other suspects," it held that, "in view of the other evidence supporting defendant's conviction," the admission of the detective's testimony was harmless. *Id.* at 500–01.

¶36    Here, unlike *Rammel*, there was no "other evidence supporting [the] conviction." *See id.* Instead, this case hinged on the jury's assessment of Child's credibility versus that of Peraza. *See Iorg*, 801 P.2d at 941–42. We agree that Expert's testimony was prejudicial because it was "clearly calculated to bolster [Child's] believability by assuring the jury no credibility problem was presented by the delay" in reporting the conduct or her subsequent recantations. *See id.*; *cf. State v. King*, 2010 UT App

396, ¶ 46, 248 P.3d 984 ("When Utah appellate courts reverse for improper bolstering, they usually do so not only where a case hinges on an alleged victim's credibility and there is no physical evidence, but also where the bolstering was done by an expert witness."(internal citation omitted)). Because there was "no[] other evidence [to support his] conviction beyond that which is tainted by" Expert's testimony, "we cannot say that absent the error there is not a reasonable likelihood of a more favorable result" to Peraza.[9] *See Iorg*, 801 P.2d at 942 (citation and internal quotation marks omitted).

---

9. Peraza has suggested that Expert's testimony is the type of "anecdotal 'statistical' evidence" condemned by the Utah Supreme Court, *see State v. Iorg*, 801 P.2d 938, 941 (Utah Ct. App. 1990), and implies that, even if the testimony had been properly and timely disclosed, it should be excluded on its own merits. We recognize that our supreme court "has continued to condemn anecdotal 'statistical' evidence concerning matters not susceptible to quantitative analysis such as witness veracity, as one of the categories of evidence leading to undue prejudice." *Id*. 801 P.2d at 941 (referencing *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989)); see *also State v. Jones*, 2015 UT 19, ¶ 50, 345 P.3d 1195 (explaining that the Utah Supreme Court has "condemned anecdotal statistical evidence when it concerns matters not susceptible to quantitative analysis," but determining that testimony "regarding the percentage of crimes linked to drug use" was a quantifiable metric (citation and internal quotation marks omitted)); *State v. Rammel*, 721 P.2d 498, 501 (Utah 1986) ("Even where statistically valid probability evidence has been presented . . . courts have routinely excluded it when the evidence invites the jury to focus upon a seemingly scientific, numerical conclusion rather than to analyze the evidence before it and decide where truth lies."). But because Peraza includes this argument only as part of the harmless error analysis, we are not asked to directly address whether the evidence is admissible even if it had been timely disclosed, and we therefore decline to do so.

¶37　We conclude the district court exceeded its discretion in admitting Expert's testimony at trial because the State failed to comply with Utah Code section 77-17-13 in that it did not provide an expert report or detailed information with respect to Expert's testimony or the scientific basis on which she would rely. Without this information the requirements under rule 702 were not met, and this error prejudiced Peraza's trial. We were not asked to determine whether—assuming that the testimony had been properly and timely disclosed—the Rule 702 requirements could be met with respect to Expert's testimony that "between four and 20 percent" of sex abuse victims recant their allegations or that the "majority" of these victims delay disclosures. On remand, if the State seeks to admit testimony with respect to delayed disclosure and recantations of sex abuse victims, from either Expert or any other expert witness, it must provide sufficient information, consistent with this opinion, to allow the court the opportunity to properly rule on its admissibility under rule 702.

## II. Denial of the Motion to Continue

¶38　Peraza contends the district court abused its discretion when it denied his motion to continue the trial to allow him to adequately prepare to cross-examine the Expert and to procure an expert witness to rebut her testimony. He argues that this prejudiced his trial because had he been able to procure a rebuttal expert, there would have been a "reasonable likelihood that the outcome of the case would have been different." We agree.

¶39　As we have discussed, the party seeking to use an expert witness at trial must disclose certain information. Utah Code Ann. § 77-17-13 (LexisNexis 2017); *see also State v. Torres-Garcia*, 2006 UT App 45, ¶ 11, 131 P.3d 292 (explaining the notice requirements under section 77-17-13). If the party "fails to substantially comply with [these] requirements . . . the opposing party shall, if necessary to prevent substantial prejudice, be entitled to a continuance of the trial . . . sufficient to allow

preparation to meet the testimony." Utah Code Ann. § 77-17-13(4)(a).

¶40 When we review the denial of an appellant's request for continuance, we consider four factors:

> (1) the extent of appellant's diligence in his efforts to ready his defense prior to the date set for trial; (2) the likelihood that the *need* for a continuance could have been met if the continuance had been granted; (3) the extent to which granting the continuance would have inconvenienced the court and the opposing party; and (4) the extent to which the appellant might have suffered harm as a result of the court's denial.

*State v. Begishe*, 937 P.2d 527, 530 (Utah Ct. App. 1997), *superseded on other grounds by statute as recognized in State v. Roberts*, 2018 UT App 9. We will address each factor in turn.

¶41 First, defense counsel diligently prepared the defense prior to trial. He timely moved to exclude Expert's testimony, highlighting the State's failure to comply with the notice requirements and emphasizing the risk of unfair prejudice to the defense when "'statistical evidence of matters not susceptible to quantitative analysis'" is presented at trial because it is "'uniquely subject to being used to distort the deliberative process and skew the trial's outcome.'" (Quoting *State v. Dibello*, 780 P.2d 1221, 1229 (Utah 1989).) After the court determined it would admit Expert's testimony if necessary, counsel immediately contacted a social worker for assistance to prepare to cross-examine Expert. The social worker informed counsel that Peraza needed his own expert witness for rebuttal, and counsel requested an "emergency [telephone] conference" to request a continuance to allow sufficient time to procure an expert witness and to prepare for cross-examination. Considering all of these efforts, we conclude that defense counsel acted diligently.

¶42   Second, Peraza likely could have been adequately prepared to meet the expert testimony if the district court granted his motion to continue the trial. He would have had the opportunity to procure an expert witness to rebut Expert's generalized statement of the probability that a victim's recantation of an allegation does not mean that the abuse did not occur. This expert might also have been able to testify about whether the "effigy doll" treatment "could have led to the allegations becoming more violent and much more pronounced over the years."

¶43   Third, Peraza's "right to a fair trial outweighed any inconvenience to the court [and] the opposing party . . . that may have been caused by a continuance." *State v. Tolano*, 2001 UT App 37, ¶ 13, 19 P.3d 400. "Although inconvenience to the court and jury is one of the four factors considered, this court has specifically held that such an administrative concern is outweighed by the [defendant's] right to a fair trial." *Id.* (quotation simplified). The district court's concerns that Child needed to be considered and that it had to "draw a line somewhere" were outweighed by Peraza's right to a fair trial.

¶44   Finally, "the extent to which [Peraza] might have suffered harm as a result of the court's denial . . . is the most important among the factors." *Id.* ¶ 14 (quotation simplified). As this court explained in *Tolano*, because of the "difficult burden placed on defendants to establish prejudice in cases such as these," the burden is on the State to persuade the court there is no reasonable likelihood that, absent the error, the outcome would have been more favorable to the defendant. *Id.*

¶45   The State has not met that burden here. First, it argues that Peraza did not seek to continue the trial to procure an expert witness to rebut Expert's testimony but instead to discuss Child's therapy treatment. This mischaracterizes the type of expert witness Peraza sought to procure. Defense counsel argued that, based on Child's therapy treatments, he needed an expert witness to rebut Expert's testimony and to inform the jury that the type of treatment she received could have influenced her withdrawal of her recantations and that this treatment "might

have led to the allegations becoming much more violent and much more pronounced as the years have gone on." Essentially, he argued that this type of treatment has been shown to affect the description of the alleged abuse.

¶46    The State also argues that the motion's denial did not prevent Peraza from "'put[ting] forward the only defense he had'" or from putting on "'the only testimony potentially effective to his defense.'" (Quoting *United States v. Flynt*, 756 F.2d 1352, 1361–62 (9th Cir. 1985).) It argues that Peraza "was able to call [Child's] credibility into question by highlighting inconsistencies in her disclosures, including her recantation and then withdrawal of the recantation." But this argument is not persuasive and we find no support for it in Utah case law. *Compare Flynt*, 756 F.2d at 1361, *with State v. Torres-Garcia*, 2006 UT App 45, ¶¶ 18–22, 131 P.3d 292 (explaining that appellate courts "must determine if the circumstances [in the present case] are such that a continuance was necessary"). Instead, we consider the circumstances related to defense counsel's ability to sufficiently prepare his defense strategy and to effectively cross-examine the State's witnesses. *See Torres-Garcia*, 2006 UT App 45, ¶¶ 18–22.

¶47    Although Peraza's counsel was able to call a fact witness, the private investigator that recorded one of Child's recantations, he was nevertheless "sufficiently prejudiced by the denial of his . . . request for a continuance." *Id.* ¶ 22. Defense counsel was able to highlight inconsistencies in Child's testimony and was able to present recantations through the private investigator. But this evidence was undercut by Expert's testimony, which should not have been permitted because it "rehabilitated [Child's] credibility, without challenge." And the harm to Peraza's trial was compounded when he was unable to present an expert witness whose testimony, arguably, would have been given similar weight to Expert's testimony. *See id.* Although counsel was able to elicit some concessions from Expert, the jury would have benefited from the opportunity to weigh Expert's testimony with a second expert from the defense. Ultimately, Peraza's ability to put forward his best defense was materially hampered by the denial of the motion to continue to

procure his own rebuttal expert. Under these circumstances, the State has failed to meet its burden of persuading this court that Peraza was not prejudiced by the denial of his motion to continue.

¶48   We conclude the district court exceeded its discretion when it denied Peraza's motion to continue the trial to adequately prepare to cross-examine the Expert and to procure an expert witness to rebut her testimony.[10]

CONCLUSION

¶49   We conclude the State failed to satisfy the notice requirements under Utah Code section 77-17-13 when it failed to provide an expert report or other written explanation articulating the scope of Expert's testimony and therefore the district court exceeded its discretion when it admitted Expert's testimony at trial without sufficient information to satisfy rule 702 of the Utah Rules of Evidence. The court also exceeded its discretion when it denied Peraza's motion to continue based on

_____

10. Peraza also contends that the error in admitting Expert's testimony at trial, along with the erroneous denial of his motion to continue, constitutes grounds for reversal under the cumulative error doctrine because "[t]he close relationship between these two rulings and the effect they had upon the evidence presented" were prejudicial. Generally, a party will invoke the cumulative error doctrine where "errors committed during the course of [the] trial were harmless individually, [but] were cumulatively harmful." *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993). Under this doctrine, we will reverse only if "the cumulative effect of the several errors undermines our confidence that a fair trial was had." *Id.* (quotation simplified). In this case, both errors were independently prejudicial and each warranted a reversal and new trial. Therefore, the cumulative error doctrine does not apply. But viewing the two harmful errors together, we are even more confident in our determination that Peraza was denied a fair trial.

the State's failure to comply with section 77-17-13. Neither of these errors was harmless. We therefore vacate Peraza's convictions and remand to the district court for a new trial consistent with this opinion.

_____