**2016 UT App 245**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GIRATO KAMILLO PHILLIP,
Appellant.

Memorandum Decision
No. 20150278-CA
Filed December 22, 2016

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 101909538

Teresa L. Welch, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and JILL M.
POHLMAN concurred.

CHRISTIANSEN, Judge:

¶1 Girato Kamillo Phillip challenges the district court's decision to revoke his probation, arguing that it was improper to base the revocation on his conduct while he was not being supervised by Adult Probation and Parole (AP&P). He also argues that he did not willfully violate the conditions of his probation because he did not know he was on probation. Because compliance with probation conditions is not legally dependent on being supervised, and because Phillip knew or should have known he was subject to probation conditions, we affirm.

¶2     The posture of this case flows from two distinct criminal episodes. First, in February 2009, Phillip pled guilty to an aggravated assault charge, receiving a prison sentence that was suspended in favor of probation. Second, in December 2010, while still on probation for his aggravated assault conviction, Phillip robbed a convenience store, which criminal act resulted in his guilty plea to aggravated robbery in April 2011. Phillip was statutorily sentenced to five years to life in prison for the robbery, but that sentence was also suspended in favor of a jail term and 36 months of probation. This appeal is brought from the district court's decision to revoke Phillip's robbery probation.

¶3     At the initial sentencing for Phillip's robbery conviction, the district court explained, from the bench and on the record, some of Phillip's probation conditions, including gang, drug, and alcohol limitations:

> He'll have gang conditions. . . . Drug and alcohol conditions. . . . Now those conditions mean you can't hang out with other gang members.[1] Also means you can [be] drug tested when they want to. You can be searched when they want to search you, your car, your person, your house. When you get to AP&P they're going to give you a contract to sign and it's going to have all these conditions on it. You make sure you understand that and you follow it.
>
> . . . .

---

1. Counsel later clarified, on the record, that Phillip was not a gang member and that the gang condition meant "[j]ust don't become a gang member, don't hang out with these guys that are."

> [A]lso, no contact with the victim, you cannot go
> back to the place where this happened, no contact
> with the co-defendants you did this with.

The court also stated that the probation would be "zero tolerance."

¶4    Roughly a month after sentencing in the robbery case, Phillip's probation in his assault case was revoked, apparently due to the events of the robbery case, and he was sent to prison on that conviction. Three months later, AP&P met with Phillip at the prison to review his probation agreement in the robbery case. The agreement stated the conditions of Phillip's probation, including obeying all state laws, abstaining from alcohol, submitting to alcohol and drug testing, and not having a dangerous weapon. The agreement also noted that his probation was "zero tolerance." Phillip initialed each paragraph of the probation agreement and signed it.[2] Thereafter, because Phillip was in prison on his assault conviction, AP&P did not actively supervise his probation in the robbery case and apparently inadvertently closed its internal file for that case.

¶5    Phillip was paroled from prison on the assault conviction in May 2013. AP&P began supervising him as a parolee in the assault case, but did not supervise him as a probationer for his robbery conviction.

---

2. On appeal, Phillip explains that he is unable to read English. As his counsel explained below, Phillip is able to understand "a little bit and can converse in regard to [his case.]" At the relevant hearings, he was provided with a translator. With regard to the signed probation agreement, Phillip notes on appeal his inability to read English but does not address whether the agreement was read to him or whether he needed and was provided with a translator when AP&P reviewed it with him.

¶6     In February 2014, a parole officer noted that Phillip was not living at the address he had provided to AP&P. The parole officer then audited AP&P's files on Phillip and discovered that Phillip's robbery probation case had been "inadvertently closed out" in AP&P's computer system. The officer corrected the error and, on February 8, 2014, began dual supervision of Phillip as both a parolee (in the assault case) and a probationer (in the robbery case).[3]

¶7     The officer later discovered that Phillip had tested positive for alcohol consumption on four occasions in December 2013, January 2014, and February 2014. Accordingly, the officer submitted a probation violation report to the district court, alleging that Phillip had violated his robbery probation by, inter alia, testing positive for alcohol use.

¶8     On September 24, 2014, the AP&P officer filed an amended violation report, alleging that Phillip had violated the conditions of his probation several more times. The amended report stated that, on September 23, 2014, Phillip pled guilty to possession of a controlled substance and carrying a concealed dangerous weapon. The amended report also alleged that Phillip had "committed a new technical offense: Assault" on April 1, 2014. Finally, the amended report explained that Phillip's parole in the original aggravated assault case had been revoked and that he was back in prison. AP&P sought the revocation of Phillip's probation in the robbery case and the reinstatement of the five-years-to-life prison sentence.

¶9     In March 2015, the court held a probation revocation hearing. Phillip argued that AP&P's failure to supervise his

---

3. Phillip notes on appeal that the record does not reflect whether he was told that he was being supervised as both a parolee and a probationer.

probation negated any finding that he had failed to comply with the conditions of probation. He further argued that he lacked notice of the conditions of probation. After hearing arguments, the court determined that Phillip had been on notice that he was on probation. However, the court further determined that Phillip was only on notice of the probation conditions announced at the sentencing hearing.[4] The court found that Phillip had not been on notice of the probation conditions requiring him to register his place of residence with AP&P and submit to a drug test. The court consequently declined to find that Phillip had violated those probation conditions. Nevertheless, the court did find that Phillip had been on notice of the prohibitions against consuming alcohol and against committing other crimes, by virtue of the sentencing court's on-the-record imposition of alcohol conditions and zero-tolerance probation. The court ruled that Phillip had violated those conditions, revoked his probation, and reinstated the original prison sentence.

¶10    Phillip appeals, contending that "[t]he district court erred in concluding that it could revoke [his] probation for conduct that occurred when AP&P was not supervising his probation." This is a challenge to the scope of the court's judicial authority granted by the relevant probation statutes, and we therefore review for correctness. *See State v. Flygare*, 2015 UT App 188, ¶ 2, 356 P.3d 698 ("We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." (citation and internal quotation marks omitted)).

¶11    Phillip argues that "the Department's supervision [was] a necessary condition of the defendant's probation." He relies on the statute governing probation, which sets forth three types of probation. *See* Utah Code Ann. § 77-18-1(2)(a) (LexisNexis 2012).

---

4. The signed probation agreement was not mentioned at this hearing.

As relevant here, the type of probation selected by the court was "under the supervision of the Department of Corrections." *Id.* § 77-18-1(2)(a)(i). Phillip argues that because the court put him on probation "to be supervised by [AP&P]," AP&P's failure to supervise "effectively closes probation." In other words, Phillip believes that without AP&P's supervision, his probation was terminated.

¶12    We conclude, however, that AP&P had no authority to unilaterally terminate a defendant's court-imposed probation. When a court properly orders a person or organization to undertake a specified action, failure (or refusal) to perform that action does not render the underlying order null.

¶13    The Utah Constitution sets forth a clear separation of powers:

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

Utah Const. art. V, § 1. "The first [clause] states the general separation of powers principle, and the second very specifically prohibits the exercise of certain functions of one branch by one charged with the exercise of certain powers of another branch." *In re Young*, 1999 UT 6, ¶ 7, 976 P.2d 581.

¶14    The judicial branch has the power to sentence convicted defendants within specified limits. *See* Utah Code Ann. § 77-18-4. As relevant here, the Utah Code specifically grants a sentencing court the ability to "suspend the execution of the sentence and

place the defendant on probation." *Id.* § 77-18-1(2)(a). The code also imbues the court with the authority to terminate probation early. *Id.* § 77-18-1(10)(a)(i). Thus, the judicial branch has the authority to begin probation and to terminate probation for those convicted offenders whose prison sentences have been suspended in favor of probation.

¶15 AP&P, as a division of the Department of Corrections, is a creature of the executive branch. In Phillip's view, AP&P's failure to supervise probation results in the automatic termination of probation. But the authority to terminate probation before its natural expiration has been allocated by statute to the judicial branch. *Id.* Allowing the executive branch, through AP&P, to exercise that same power, by failing or refusing to supervise a convicted defendant, therefore offends the Utah Constitution's separation of powers provision. Accordingly, we conclude that AP&P could not have terminated Phillip's probation early, regardless of whether it acted willfully or negligently in not supervising that probation. It follows that Phillip's probation was not terminated by AP&P's failure to supervise him.

¶16 Phillip next contends that "[t]he district court erred in concluding that it could revoke [his] probation where the record indicates that [he] did not willfully violate his probation." To successfully challenge the factual basis for a probation revocation, a defendant must show that the evidence of a probation violation, viewed in the light most favorable to the district court's findings, was so deficient that the district court abused its discretion in revoking probation. *State v. Legg*, 2014 UT App 80, ¶¶ 2, 7, 324 P.3d 656; *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct. App. 1994). But to the extent that this contention challenges the district court's reading of the relevant probation statutes, we review for correctness. *State v. Flygare*, 2015 UT App 188, ¶ 2, 356 P.3d 698.

¶17   The district court assumed that, in order to revoke probation based on a probation violation, it was required to determine by a preponderance of the evidence that the violation was willful. *See State v. Pantelakis*, 2014 UT App 113, ¶ 4, 327 P.3d 586. *But see Bearden v. Georgia*, 461 U.S. 660, 668 & n.9 (1983) (noting that "the probationer's lack of fault in violating a term of probation," in circumstances other than failing to pay a fine or restitution due to impecuniosity, does not prevent a court from revoking probation).[5] The district court determined that Phillip had not been given notice of several of the conditions of his probation and that his violation of those conditions was therefore not willful. Accordingly, it did not base its revocation decision on those violations. Instead, the basis of the district court's decision to revoke probation was that Phillip had notice of the probation conditions that forbade the consumption of alcohol and the commission of new crimes and that Phillip's violation of those conditions was therefore willful.

¶18   Phillip argues that he "could not have known or believed that he was on probation during the time of the alleged conduct." He asserts that he could not have willfully violated his probation conditions if he did not know that he was on probation. In Phillip's view, it was reasonable for him to believe

---

5. The purposes of probation are several and include the protection of society and the deterrence of criminal behavior. *See State v. Candedo*, 2010 UT 32, ¶ 21, 232 P.3d 1008. When a probationer's voluntary activities contradict the goals of probation, even if it was not his or her purpose to frustrate them, the supervising court has the discretion to revoke probation in furtherance of those goals. *See, e.g., United States v. Warner*, 830 F.2d 651, 657 (7th Cir. 1987) (observing that, where "probation's purposes have been frustrated" by the probationer's continued criminal behavior, "revocation is fair and appropriate even if the probationer did not willfully violate his probation conditions").

that he was not on probation, because AP&P failed to supervise or meet with him after the initial meeting at which he signed the probation agreement.

¶19    We disagree. During the plea colloquy, the court stated that the maximum penalty for aggravated robbery was "five years to life in the prison" and that, although "we have all agreed that you are going to do a year in jail and then go to AP&P probation," "you need to understand if you don't comply with probation . . . , a judge could bring you back and sentence you to that maximum amount." Phillip responded, "Yes, I understand." After Phillip entered his guilty plea, the court stated, "[T]he sentence of this Court will be to stay the five to life in prison . . . and place the defendant with [AP&P] for a period of 36 months." The court then noted and explained several, albeit not all, of the conditions of Phillip's probation. In light of these statements, and Phillip's later signing of the probation agreement, it was unreasonable for him to believe that he was not on probation simply because AP&P was not supervising that probation. In other words, the absence of an agency monitoring a defendant's compliance with probation conditions does not render reasonable the defendant's belief that the conditions no longer exist or that he or she is no longer required to comply with the court order setting them.

¶20    Because Phillip's probation was not terminated by AP&P's inaction, the district court had jurisdiction to revoke that probation. And because Phillip could not have reasonably believed that the conditions of probation no longer applied to him, the district court did not err in determining that he had willfully violated those conditions. We therefore affirm the district court's probation revocation ruling.

———————