**2018 UT App 122**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
OZWALD BALFOUR,
Appellant.

Opinion
No. 20160821-CA
Filed June 21, 2018

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 111905240

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
KATE A. TOOMEY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     After a jury convicted Defendant Ozwald Balfour of forcibly sodomizing a seventeen-year-old girl (Victim), the district court afforded him the privilege of probation: the court imposed a suspended prison sentence of five years to life, ordered Defendant to serve one year in jail, and thereafter allowed him the opportunity to spend three years on probation, during which time he would be required to abide by various specific terms and conditions. Over a year later, however, the district court determined that Defendant had violated the terms and conditions of his probation, and consequently revoked his probation and imposed the suspended prison sentence. Defendant appeals the revocation of his probation. We affirm.

BACKGROUND

¶2    Following his conviction,[1] the district court sentenced Defendant to a prison term of five years to life, but suspended the sentence on the condition that Defendant serve three years of probation. The probation conditions required Defendant to serve one year in jail, and to abide by various other usual and customary terms and conditions, including reporting to and maintaining contact with Adult Probation and Parole (AP&P), maintaining a stable residence, completing a treatment evaluation and any relevant follow-through, and refraining from further violating any laws. In addition to having to satisfy those general terms, Defendant was also required to abide by specific "sex offender Group A conditions" as part of his probation. Group A conditions apply to offenders who have committed a sex offense against a minor. Among other things, these conditions require an offender to successfully complete sex offender therapy and to refrain from having contact with minors without advance permission from AP&P.

¶3    While Defendant was serving his jail term, his probation officer (Officer) met with him and asked him to sign a probation agreement stipulating to the terms of his probation, including the Group A conditions. Defendant refused to sign, arguing that his seventeen-year-old "alleged victim" was not a minor and thus that the Group A conditions should not be imposed. Defendant also indicated that he did not see any reason why he should have to get permission from AP&P to live at his house with his thirteen-year-old son. Because Defendant refused to sign the probation agreement, Officer filed a "Progress/Violation" (P/V) report with the court recommending that Defendant's probation be revoked. By this time, the judge

---

1. We have already recounted the details of Defendant's offense, trial, and conviction in a previous opinion, *see State v. Balfour*, 2018 UT App 79, ¶¶ 2–6, 12–19, and therefore do not restate those details here.

who had sentenced Defendant had retired, and the case had been assigned to another judge. After an April 27, 2015 hearing, the new judge entered a minute entry ordering "AP&P and defendant to meet at release date to sign contract." Defendant eventually signed the probation agreement.

¶4 Several months later, after Defendant's release from jail, Officer filed a second P/V report accompanied by an affidavit alleging that Defendant was violating his probation in several particulars. The affidavit contained five specific allegations. First, Officer alleged that Defendant failed to establish a residence of record or changed his residence or left the state of Utah without permission. Second, Officer alleged that Defendant failed to comply with the Utah Sex Offender Registration and/or DNA requirements. Third, Officer alleged that Defendant failed to report a July 2015 incident in which he was "arrested, cited or questioned by a peace officer." Fourth, Officer alleged that Defendant "had [unauthorized] contact with children under the age of 18." And fifth, Officer alleged that Defendant "entered a place where children congregate." At this point, the district court scheduled a hearing to contemplate revoking or modifying Defendant's probation, but for various procedural reasons the hearing was delayed.

¶5 Before the hearing, Officer filed an additional affidavit and P/V report to add a sixth allegation, alleging that Defendant had not paid the supervision fees as required for his probation. Officer also stated in the P/V report that Defendant "reported he recently had a birthday party at his residence and disclosed [that] his minor son was in attendance." In the report, Officer opined that it "appear[ed] as though [Defendant] [felt] the Sex Offender Group A conditions of his probation [were] not applicable to him" and that Defendant's "attitude and demeanor" did not appear to be "amenable to probation."

¶6 Officer later learned that, in April 2014, police had arrested Defendant in an unrelated incident and charged him with theft and impersonating a public official. Upon learning of

Defendant's arrest in this earlier incident, Officer submitted another affidavit, alleging that he was unaware of whether Defendant ever reported this incident to AP&P.

¶7 Shortly after this, Officer filed two more P/V reports asserting that Defendant had not added his employer information to the Utah State Sex Offender Registry, had still not paid his supervision fees, and had "absconded from the supervision of [AP&P]" after being informed he would be arrested for his repeated probation violations. At a hearing concerning these affidavits, the district court, at the State's request, appointed a new probation officer to work on Defendant's case. The court then continued the hearing and emphasized that "Defendant must get into compliance with AP&P." A few weeks later, the court continued the hearing a second time in order to give Defendant a third chance to comply, and informed Defendant that he had "to become compliant by the next hearing."

¶8 Before the final hearing, Defendant's new probation officer (Second Officer) filed additional P/V reports. In one of these reports, Second Officer emphasized Defendant's poor attitude and alleged that Defendant "continued to put in minimal or partial effort" in complying with his probation conditions, especially the Group A conditions. Second Officer also noted that Defendant insisted on referring to Victim as his "alleged victim," and noted that Defendant also continued to maintain that Victim was not a minor at the time of his offense. Second Officer finally noted that Defendant was "living with his minor son" despite failing to complete the steps required to live with a minor child under the Group A probation conditions, and opined that Defendant's failure "to accept his conviction and crime or acknowledge a victim exists" increased the risk Defendant posed to public safety. In a final P/V report, Second Officer further explained that Defendant refused to comply with his sex offender treatment, had "shown defiance and push back to his [t]herapist," and had ultimately been discharged from his treatment program without completing it.

¶9 At the final hearing, the district court considered all of the P/V reports and affidavits concerning Defendant, and heard testimony and argument. At the conclusion of the hearing, the court found that Defendant had violated his probation in four ways: (1) by having contact with his minor son and grandchildren without AP&P permission; (2) by failing to comply with the sex offender registration requirements; (3) by failing to report to AP&P; and (4) by failing to successfully complete sex offender treatment. As a consequence of these violations, the district court revoked Defendant's probation and imposed the original prison sentence.

ISSUES AND STANDARDS OF REVIEW

¶10 Defendant raises three issues on appeal. First, he contends that the district court plainly erred when it relied on information contained in multiple affidavits, instead of relying on only a single affidavit.[2] "To demonstrate plain error, a defendant must establish that (i) an error exists; (ii) the error should have been obvious to the district court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Crespo*, 2017 UT App 219, ¶ 23, 409 P.3d 99 (quotation simplified).

¶11 Second, Defendant contends that the district court did not have subject matter jurisdiction over the probation hearing because the judge who initially sentenced Defendant retired.

_____

2. Defendant also contends that his counsel was ineffective for failing to raise this error and demand that the district court rely on a single "affidavit." Because we determine, for reasons stated below, that the district court did not err in relying on multiple affidavits, it follows that any motion counsel made to restrict the court to a single affidavit would have been futile. Failure to make futile motions does not constitute ineffective assistance of counsel. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

Whether a district court had subject matter jurisdiction is a question of law, which we review for correctness. *State v. Young*, 2014 UT 34, ¶ 5, 337 P.3d 227.

¶12    Third, Defendant contends both that the district court plainly erred in parsing the evidence presented in the P/V reports and that the evidence presented was insufficient to establish two of the four probation violations Defendant was accused of committing. Defendant concedes that these issues are unpreserved, but asks us to review them for plain error. *See State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443 (explaining that appellate courts will review unpreserved issues only for plain error or ineffective assistance of counsel, unless exceptional circumstances are present).

ANALYSIS

¶13    Defendant first contends that the district court plainly erred by considering more than one of the affidavits attached to the P/V reports. In support, Defendant cites Utah Code section 77-18-1(12)(b)(i), which states that "[u]pon the filing of *an affidavit* alleging with particularity facts asserted to constitute violation of the conditions of probation, the court that authorized probation shall determine if the affidavit establishes probable cause to believe that revocation, modification, or extension of probation is justified." *Id.* § 77-18-1(12)(b)(i) (LexisNexis 2017) (emphasis added).[3] Defendant argues that the statute's use of the singular term "affidavit" indicates that a district court is barred from considering more than one affidavit during a probation modification hearing.

---

3. This statute has recently been amended, but the recent amendments are not substantive and do not affect the outcome of this appeal. Accordingly, we refer to the most recent edition of the Utah Code for convenience. *See State v. Peraza*, 2018 UT App 68, ¶ 28 n.7.

¶14 We disagree. When interpreting a statute, an appellate court's "primary goal is to ascertain the intent of the legislature." *State v. Mooers*, 2017 UT 36, ¶ 7. Our legislature has specifically advised us that when interpreting a statute we should read "[t]he singular" to "include[] the plural," "unless the construction" yielded by this rule would be "(i) inconsistent with the manifest intent of the Legislature; or (ii) repugnant to the context of the statute." Utah Code Ann. § 68-3-12(1)(a), (b) (LexisNexis 2016). Defendant does not argue that either of those exceptions apply. Indeed, as the State points out, adopting Defendant's proposed rule would simply result in the creation of "larger, consolidated affidavit[s]," duplicative of all previous affidavits, for probation modification hearings. We fail to see how allowing the use of multiple affidavits would be inconsistent with, or repugnant to, the context of the statute or legislative intent. Accordingly, the district court did not err at all—let alone commit plain error—when it considered more than one affidavit during the probation modification hearing.

¶15 Defendant next contends that the district court did not have subject matter jurisdiction over the probation hearing because the judge who initially sentenced Defendant to probation had retired from the bench by the time of that hearing. In support, Defendant cites the statute governing probation modification hearings, which states that "*the court that authorized probation* shall" determine whether a revocation or other modification of probation is warranted. *Id.* § 77-18-1(12)(b)(i) (emphasis added). Defendant maintains that the specific judge who sentenced him was "the court that authorized probation" and that any other judge would be a new court, and thus that it is "jurisdictional error for a different judge [than the one who sentenced Defendant] to address the" probation modification hearing.

¶16 Defendant misapprehends the law. The term "the court," as used in the statute Defendant references, does not refer to a specific judge, but rather to a specific judicial office that individual judges may occupy. *See Blackmore v. L&D Dev. Inc.*,

2016 UT App 198, ¶ 31, 382 P.3d 655 (noting that, "when a second judge has taken over" a case, "the two judges, while different persons, constitute a single judicial office" (quotation simplified)); *see also Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 30, 24 P.3d 984 (noting that a ruling from a substitute judge is a ruling by "the same judicial officer," and not a ruling by a distinct "co-equal court"). Thus both the judge who presided over Defendant's sentencing and the subsequently assigned judge were part of "the court that authorized probation." *See* Utah Code Ann. § 77-18-1(12)(b)(i). Accordingly, the district court—represented by the newly assigned judge—had jurisdiction to revoke Defendant's probation.

¶17 Finally, Defendant contends, for two reasons, that the evidence presented to the district court was insufficient to support the revocation of his probation. First, Defendant asserts that the district court plainly erred when it rephrased the facts presented in the P/V reports to articulate Defendant's probation violations. Second, Defendant asserts that the evidence was insufficient to support the district court's finding as to two of the four probation violations, and that the district court plainly erred by finding otherwise.

¶18 On the first point, Defendant asserts that the district court infringed on the power of the executive branch when it phrased its findings—that Defendant had violated the terms and conditions of his probation—in different terms than the probation officers used in their various affidavits and P/V reports. For example, Defendant notes that the P/V reports described a problem with Defendant's participation in sex offender treatment, but phrased that problem as Defendant having "[failed] to participate in sex offender therapy." Defendant correctly notes that this allegation, as phrased in the P/V reports, is not true, because Defendant did—at least minimally—participate in treatment. The district court eventually found, however, that Defendant failed to complete sex offender treatment due to having been unsuccessfully discharged from his treatment program because of his refusal to

comply with basic program requirements. Defendant asserts that "'[b]eing unsuccessfully discharged' from therapy is different than . . . 'having failed to *participate* in sex offender therapy,'" and contends that the district court overstepped its bounds by determining that Defendant was unsuccessfully discharged.

¶19    We disagree. In so doing, we note that Defendant appears to misapprehend which branches of government are involved during the imposition, modification, or revocation of probation. "[T]he judicial branch has the authority to begin probation and to terminate probation." *State v. Phillip*, 2016 UT App 245, ¶ 14, 391 P.3d 334; *see also Padilla v. Utah Board of Pardons & Parole*, 947 P.2d 664, 668 (Utah 1997) (stating that "[t]he power to execute sentences remains in the exclusive control of the judiciary"). Thus, the district court had the authority to determine that Defendant had violated his probation and revoke his probation, with or without input from AP&P. Although AP&P—which is "a division of the Department of Corrections" and is therefore "a creature of the executive branch," *see Phillip*, 2016 UT App 245, ¶ 15—assisted the court in that role by bringing suspected probation violations to the court's attention, that assistance did not rob the court of its ultimate authority to determine whether Defendant had violated the terms and conditions of his probation. The district court did not violate separation of powers principles when it chose to couch its probation violation findings in different terms than the probation officers used in their affidavits. *See id.* (stating that "the authority to terminate probation before its natural expiration has been allocated by statute to the judicial branch"). The district court did not err at all—let alone plainly err—by using its own verbiage, rather than AP&P's, to describe Defendant's conduct.

¶20    Defendant next argues that the district court plainly erred by revoking his probation, and claims that the evidence before the district court was insufficient to support its findings that Defendant violated his probation by: (1) having unauthorized contact with his minor son and grandchildren; and (2) failing to

complete sex offender treatment.[4] We find Defendant's arguments unpersuasive.

¶21  With respect to the first probation violation, Defendant alleges that, while he did have unauthorized contact with minor children, that contact was "innocuous at best." Defendant contends that he should, as a father, be allowed "to have contact with his own son." With respect to his minor grandchildren, Defendant states that his unauthorized contact with them at a family birthday party was "brief," "incidental," and "unintentional," and insists that "[t]here was no predatory behavior like stalking or enticing a minor" during the interaction. Even if we assume that Defendant had no predatory sexual intent during these encounters, his assertion is irrelevant. There is no "family exception" to the Group A conditions that were part of the terms of Defendant's probation, and he does not argue otherwise. Part of those conditions is the requirement that AP&P give permission for Defendant to have any contact with minors, and Defendant does not claim that AP&P gave its permission for him to live with his son or to attend the birthday party with children present. Moreover, criminal intent need not be proven before a probation violation can be found. Instead, a court need only find that a probation violation was "willful," which "merely requires a finding that the probationer did not make *bona fide* efforts to meet the conditions of his probation." *State v. Snyder*, 2015 UT App 172, ¶ 7, 355 P.3d 246 (quotation simplified). It was reasonable for the court to make such a finding in this case where Defendant by his own admission had

---

4. Defendant does not contest the court's finding that he also violated his probation by refusing to comply with sex offender reporting requirements and by failing to report to AP&P. Because we determine that the district court did not err with respect to the two probation violations Defendant challenges, we need not reach the question of whether Defendant's probation could properly have been revoked based solely on the unchallenged probation violations.

voluntary contact with his minor son without obtaining AP&P's permission, and did not make any documented attempt to avoid contact with his minor grandchildren. This is especially true in view of the evidence the court had before it that Defendant refused to acknowledge that his victim was a minor and thus refused to concede that the Group A conditions should apply to him. Accordingly, the district court did not err by finding that Defendant violated his probation by having contact with minor children without AP&P's permission.

¶22    Finally, Defendant alleges that the district court erred in finding that he failed to successfully complete sex offender therapy. Defendant does not assert, however, that he did in fact successfully complete sex offender therapy. Nor does Defendant cite to any evidence in the record challenging AP&P's representation that Defendant was unsuccessfully discharged from therapy because he had "shown defiance and push[ed] back" against his therapist. In the absence of any contrary assertion from Defendant, the evidence was clearly sufficient for the district court to determine that Defendant did not complete sex offender therapy and that this violation was "willful."

CONCLUSION

¶23    The district court did not err when it relied on more than one affidavit in making its factual determinations, and it was not without subject matter jurisdiction to modify or revoke Defendant's probation simply because the sentencing judge retired. With regard to the merits of the district court's decision to revoke Defendant's probation, there was sufficient evidence to support the district court's findings. Accordingly, we affirm the district court's decision to revoke Defendant's probation.

———————