*This opinion is subject to revision before final publication in the Pacific Reporter*
**2020 UT 48**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner*

*v.*

ROBERT ALONZO PERAZA,
*Respondent.*

No. 20180487
Heard April 18, 2019
Filed July 15, 2020

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Darold J. McDade
No. 131402387

Attorneys:

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen.,
Salt Lake City, Randy M. Kennard II, Provo, for petitioner

Douglas J. Thompson, Provo, for respondent

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 Robert Alonzo Peraza was convicted of four counts of sodomy on a child. The court of appeals vacated those convictions, concluding that the trial court committed two reversible errors: allowing the State's expert witness to testify in violation of Utah Rule of Evidence 702 and denying Peraza's request for a continuance of the trial date.

¶2  The State petitioned for certiorari, arguing, among other things, that the court of appeals erred by conflating the standards and remedies under Utah Code section 77-17-13 (Expert Notice Statute) and rule 702, and by placing the burden on the State to prove that Peraza had not been prejudiced by the denial of his motion for a continuance.

¶3  We conclude that the court of appeals did conflate the requirements and remedies of the Expert Notice Statute and rule 702. We also hold that it erred in shifting the burden to the State to disprove prejudice.

¶4  We therefore reverse the court of appeals' holding that the trial court erroneously admitted the expert witness testimony. And we remand to the court of appeals to apply the correct prejudice standard in relation to the trial court's denial of Peraza's motion to continue and to address any remaining claims.

## BACKGROUND

### *Sexual Abuse Allegations*

¶5  A nine-year-old child told her mother and grandfather that Peraza, the child's stepfather, had been sexually abusing her. The grandfather immediately contacted the police, who began investigating the allegations. As part of the investigation, the child was interviewed at the Children's Justice Center (CJC). She disclosed that Peraza began forcing her to perform oral sex on him when she was six years old and that the abuse had continued until recently. During the interview, the child described in graphic detail the anatomy of male genitalia, the erectile and ejaculatory process, the appearance of semen, and the physical motions of masturbation.

¶6  Peraza was subsequently arrested and interviewed by the police. He initially denied sexually abusing the child, stating that he believed the child's mother and grandfather had likely coached her into making the allegations. Eventually, however, Peraza acknowledged that there was at least one occasion where he had been drunk and could have mistaken the child for his wife and unwittingly forced her to perform oral sex on him. He then admitted it could have happened "a few more times."

¶7  In the period after Peraza's arrest, the child recanted the allegations to her mother and Peraza's private investigator. But the child later reaffirmed the earlier descriptions of abuse and added additional allegations against Peraza and another

perpetrator. She explained that she had lied when she recanted the abuse allegations because she did not want her family to be separated.

¶8 The State ultimately charged Peraza with four counts of sodomy on a child[1] and one count of aggravated sexual abuse of a child, all first-degree felonies. He pleaded not guilty to the charges and requested a jury trial.

*Pretrial Proceedings*

¶9 Before trial, the State filed a notice of its intent to call the child's therapist from California as an expert witness to testify "generally about the psychological symptoms, reactions, and behaviors common in children that report having been abused sexually, and that her observations of [the child's] symptoms and behavior are consistent with those of other children who report sexual abuse." The State's notice indicated that the child's therapist "may also provide corroborative evidence to rebut any defense claims of fabrication, coaching, etc."

¶10 Peraza filed a motion to exclude the child's therapist from testifying. Specifically, Peraza argued that the description of the therapist's proposed testimony was vague and failed to provide the defense with adequate information to meet that testimony. He also argued that any testimony regarding "stereotypical" reactions of children who report sexual abuse should be ruled inadmissible because it is unreliable and prejudicial under Utah Rule of Evidence 403. According to Peraza, "[t]he behaviors of children that *claim* to have been sexually abused—not those whose claims are actually proven or substantiated independently—is not susceptible to quantitative analysis where the children's alleged underlying condition of being sexually abused is uncertain."[2]

---

[1] Utah Code section 76-5-403.1(1) provides that a person commits sodomy upon a child if he or she "engages in any sexual act upon or with a child who is under the age of 14, involving the genitals or anus of the actor or the child and the mouth or anus of either person, regardless of the sex of either participant."

[2] In the introductory paragraph, Peraza indicated that his motion to exclude was "based on Utah Code of Criminal
(Continued . . .)

¶11 But before the trial court ruled on Peraza's motion to exclude, the State withdrew its notice for the child's therapist. Peraza then served the child's therapist with a Utah subpoena, but she stopped communicating with the defense when asked to appear for trial. The State had intended to question the child's therapist as a defense witness. But as trial neared and Peraza had not filed a notice of expert testimony, the State filed a notice of its intent to call a different expert witness to rebut Peraza's likely defense that the child's testimony should be disbelieved because of her prior recantation and inconsistent statements.

¶12   The State filed this notice thirty-two days before trial. The notice explained that the State planned to call a forensic interviewer from the CJC to testify to "matters of specialized knowledge and experience." The State's notice indicated that the expert witness would testify to, "[t]he methodology and science related to forensic interviewing of suspected child sex abuse victims; science and research regarding child disclosures of sex abuse including identified factors related [to] delayed, partial and gradual disclosures and recantation." The notice also included the expert's contact information, curriculum vitae, and an extensive list of articles she would rely on for her testimony. Peraza did not file a written motion to exclude this expert witness.

¶13   Twelve days before trial, the trial court held a hearing to dispose of a number of outstanding matters. Relevant here, Peraza orally moved for the first time to exclude the forensic interviewer from testifying as an expert witness. Although he had not submitted a written motion for this expert witness, Peraza asked the trial court to apply the motion that he had previously filed regarding the child's therapist. The State then provided the trial court with a hard copy of Peraza's previous motion to exclude.

¶14 During the pretrial hearing, Peraza challenged the adequacy of the State's notice for the forensic interviewer, stating that he "[did not] really know exactly what this expert would be testifying to" and that he did not have access to the listed articles because they required a subscription. He also argued that, assuming the expert witness planned to testify about any

_____

Procedure § 77-17-13 and Utah Rules of Evidence 702 and 403." However, he did not apply or analyze rule 702 in the body of the motion.

"statistical basis" for the nature of the child's disclosures and recantations, such testimony did not meet the threshold requirements of rule 702 and was likely to prejudice the defense because it could bolster the child's credibility.

¶15 In response, the State argued that it intended to call the expert witness only to rebut any argument from Peraza that the child was not credible because her testimony had changed over time and she had recanted the allegations on at least one occasion. It then clarified that the expert witness would testify that children might not "make a full disclosure initially, and that it's a process," but that she would not opine as to whether the child here was being truthful or not.

¶16 In addressing the oral motion, the trial court noted that it "[did not] know what's going to happen, because [it did not] have testimony" and "[did not] know what people are going to say until it actually gets done." In addition, the trial court acknowledged that it was unsure "whether or not [the expert witness was] going to be needed."[3] Nevertheless, the court determined that the State's witness "would meet the criteria for being an expert" under rule 702.

¶17 Peraza then argued that he still did not "have a thorough enough written explanation of the expert's proposed testimony, sufficient to give [him] adequate notice to prepare and meet that testimony, especially since [he did not] have . . . those studies." The State responded that the expert witness was "available . . . to consult with [Peraza] . . . [to] answer any questions" and that it was likewise unsure what testimony would be necessary from the expert until it heard the defense's evidence.

¶18 The trial court acknowledged that there was not "a motion . . . pending with regard to this particular expert," but that it was "going to deny [the] motion at this point in time." It stated that "[f]or purposes of today, . . . [it was] going to deny [Peraza's]

---

[3] The trial court's statement that it was unsure whether the expert witness would be needed is likely referring to the State's explanation that the State planned to call the expert as a rebuttal witness only if Peraza challenged the child's credibility based on her recantations or her partial, gradual, and delayed disclosures.

motion." But the court noted that it would consider objections and "maybe this lady doesn't come in." The court then restated that "looking at skill, experience, [and] education," the witness met the rule 702 requirements to be qualified to testify as an expert.

¶19   Peraza responded that he understood that the trial court had ruled on his objection and indicated that he would submit a written motion for this specific witness.[4] The court agreed that "[it would] like to have something there, and especially for [Peraza's] purposes, if something comes of it, [he would] need that for the next level."

¶20   Peraza then asked, "In light of the [court] . . . reserving [on] the expert testifying or not," whether he could "get an electronic copy of all the reports that [the expert witness would be] relying on as authority," stating that "[w]ithout having access to them, [he had] no means of effectively cross examining her." The court agreed and asked the State to pare down the list of articles and provide Peraza with copies of the articles that the expert would rely on for this case. The State indicated that it would provide Peraza with the expert's documents relating to "the process of child disclosures." In response, the trial court said, "[I]f I get an objection at the trial on it, then it may not come in."

¶21   Later that day, defense counsel requested an emergency telephone conference to ask the trial court for another continuance. During that conference, counsel stated that he had begun preparing to meet the expected testimony of the forensic interviewer after the trial court ruled that she was qualified to testify as an expert witness for the State. In doing so, he consulted with the Salt Lake Legal Defender's director of mental health and social work. During this discussion, counsel described for the director some of the techniques used by the child's therapist, including having the child make and kill effigy dolls of Peraza and another alleged perpetrator that the child had disclosed during her therapy sessions. Counsel stated that, as a result of his discussion with the director, he learned for the first time that this therapy technique "could give grounds for the recantation of the recantation, and also . . . might have led to the allegations becoming much more violent and much more pronounced as the

---

[4] A written motion to exclude the forensic interviewer was never submitted.

years have gone on." Arguing that the "therapy may have led to possible contamination of the [child's] testimony," counsel requested a continuance to acquire his own expert witness to review the child's therapy records and determine whether they may "give a foundation for the defense." The State responded that while it was "unhappy with . . . continuing again," it "underst[ood] the basis of what [Peraza was] asking for."

¶22   The trial court denied the motion for a continuance, stating that it believed Peraza could have discovered this information previously. In addition, the court reasoned that the trial had already been continued three times and that it had "to draw the line somewhere." It concluded by acknowledging that "this might be something that could be used later" but indicated that the trial should take place as scheduled because they had an obligation to the alleged victim. The case proceeded to trial twelve days later.

*Trial*

¶23   At trial, the State called the forensic interviewer to testify as a rebuttal witness. Peraza objected, arguing that she was not a proper rebuttal witness because evidence that the child had recanted the sexual abuse allegations was presented in the State's case-in-chief, not the defense's case. The trial court overruled the objection and allowed the State to continue laying a foundation for the expert witness. The State asked the expert witness about her education, experience, specialized training, and the scientific research supporting forensic interviewing techniques for children. The expert testified that she had read research articles that were peer reviewed to ensure that they are "accurate, and . . . represent[ed] the field."

¶24   The State then elicited testimony from the witness about the research she had read relating to recantations and partial, gradual, and delayed disclosures of allegations of child sex abuse. Other than counsel's initial objection that the expert was not a proper rebuttal witness, counsel did not object to any of the expert's testimony.

¶25   Following a three-day trial, the jury convicted Peraza of four counts of sodomy on a child and sentenced him to concurrent

sentences of twenty-five years to life on each count.[5] Peraza appealed his convictions to the Utah Court of Appeals.

*Court of Appeals' Opinion*

¶26 On appeal, Peraza made a number of arguments, including that the trial court abused its discretion when it allowed the expert witness to testify because the State had not provided sufficient information for the court to determine whether the testimony satisfied evidentiary rule 702. *See State v. Peraza*, 2018 UT App 68, ¶¶ 23, 25, 427 P.3d 276. Peraza also argued that he had been prejudiced by the trial court's denial of his request for a continuance because he was unable to procure an expert witness. *See id.* ¶¶ 24, 38.

¶27 The court of appeals concluded that the trial court erred in admitting the expert's testimony. *Id.* ¶¶ 2, 30, 32, 37, 49. According to that court, because the State's notice did not comply with the Expert Notice Statute, the trial court was deprived of "the information necessary to rule on the admissibility of Expert's testimony under rule 702." *Id.* ¶ 2; *see also id.* ¶¶ 28, 31, 37, 49. It concluded that this error was prejudicial. *Id.* ¶ 37.

¶28 The court of appeals also concluded that the trial court abused its discretion in denying Peraza's request for a continuance. *Id.* ¶¶ 2, 38, 48. Its analysis relied on the Expert Notice Statute, *id.* ¶ 39, which states that if the party seeking to admit expert testimony "fails to substantially comply with the requirements of this section, the opposing party shall, if necessary to prevent substantial prejudice, be entitled to a continuance of the trial or hearing sufficient to allow preparation to meet the testimony," UTAH CODE § 77-17-13(4)(a). The court concluded that "the burden is on the State to persuade the court there is no reasonable likelihood that, absent the error, the outcome would have been more favorable to the defendant." *Peraza*, 2018 UT App 68, ¶ 44 (citing *State v. Tolano*, 2001 UT App 37, ¶ 14, 19 P.3d 400). And it concluded that the State had not met its burden. *Id.* ¶¶ 45–47.

---

[5] Before closing arguments, the State moved to dismiss the charge of aggravated sexual abuse of a child, which the trial court granted.

¶29 Based on these two errors, the court of appeals vacated Peraza's convictions and remanded the case to the trial court for a new trial. *See id.* ¶¶ 2, 49.

¶30 The State petitioned for certiorari, which we granted. We exercise jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶31 On certiorari, we review the court of appeals' decision for correctness. *State v. Rothlisberger*, 2006 UT 49, ¶ 8, 147 P.3d 1176.

## ANALYSIS

¶32 The State asks us to reverse the court of appeals' decision vacating Peraza's convictions. Specifically, we granted certiorari to consider two issues: (1) whether the court of appeals erred in vacating Peraza's convictions based on its construction and application of Utah Rule of Evidence 702 and the Expert Notice Statute, and (2) whether the court of appeals erred in assigning the State the burden to prove that Peraza was not prejudiced by the trial court's erroneous denial of his motion for a continuance. We first address the court of appeals' decision regarding the expert witness.

### I. EXPERT WITNESS TESTIMONY

¶33 The State first contends that, in determining that the trial court abused its discretion when it allowed the expert witness to testify, the court of appeals erroneously conflated the requirements of Utah Rule of Evidence 702 and the Expert Notice Statute.[6] We agree that the court of appeals' rule 702 analysis relied in part upon unrelated notice requirements.

---

[6] The correct standard of review for a trial court's decision to admit or exclude expert witness testimony is "abuse of discretion." The trial court "abuses its discretion when it admits or excludes evidence under the wrong legal standard." *State v. Lowther*, 2017 UT 34, ¶ 17, 398 P.3d 1032 (citation omitted) (internal quotation marks omitted). Whether it applied the correct legal standard is a question of law reviewed for correctness. *Id.* If the trial court did apply the correct legal standard, a reviewing court will reverse its decision to admit or exclude expert

(Continued . . .)

¶34 The rules of evidence and the Expert Notice Statute have distinct purposes, timing requirements, and remedies. These differences are essential to understanding what a proponent of expert witness testimony in a felony criminal case must do at different stages of the litigation. Accordingly, we begin our analysis by highlighting these distinctions.

¶35 When a party seeks to call an expert to testify at trial in a felony criminal case, they must provide notice to the other party in accordance with the Expert Notice Statute. *See* UTAH CODE § 77-17-13(1)(a). Under that statute, the proponent of the expert testimony must "give notice to the opposing party as soon as practicable but not less than 30 days before trial." *Id.* The notice must include the expert's name, address, curriculum vitae, and either a copy of the expert's report or, if one does not exist, "a written explanation of the expert's proposed testimony sufficient to give the opposing party adequate notice to prepare to meet the testimony" along with "a notice that the expert is available to cooperatively consult with the opposing party on reasonable notice." *Id.* § 77-17-13(1)(b).

¶36 The Expert Notice Statute prescribes two remedies if the proponent of the testimony does not comply with its requirements. First, if the proponent "fails to substantially comply with [the Expert Notice Statute's] requirements . . . , the opposing party shall, if necessary to prevent substantial prejudice, be entitled to a continuance of the trial or hearing sufficient to allow preparation to meet the testimony." *Id.* § 77-17-13(4)(a). Second, "[t]he remedy of exclusion of the expert's testimony will only apply if the court finds that a party deliberately violated" the provisions of the Statute. *Id.* § 77-17-13(4)(b).[7] While not at issue

---

testimony only if the decision exceeds "the limits of reasonability." *State v. Cuttler*, 2015 UT 95, ¶ 12, 367 P.3d 981 (citation omitted) (internal quotation marks omitted).

[7] As the Expert Notice Statute establishes (1) a timing requirement for providing notice of an expert witness and (2) corresponding disclosure rules, it arguably treads into the domain of the Utah Rules of Criminal Procedure. *See* UTAH R. CRIM. P. 16 (governing discovery in a criminal case and establishing sanctions for noncompliance). The Utah Constitution charges this court with "adopt[ing] rules of procedure . . . to be used in the courts of the state," and it permits the legislature to

(Continued . . .)

here, the Statute also states that a court "shall impose appropriate sanctions" if it finds that the failure to comply is the result of bad faith. *Id.*

¶37　The Expert Notice Statute's focus is to enable a party to prepare before trial for expert testimony offered by an opponent. *See id.* § 77-17-13(1)(a)–(b). Accordingly, the proponent of the expert testimony must comply with its requirements before trial. *See id.* § 77-17-13(1)(a). The default remedy for noncompliance is a continuance, but only if that noncompliance is "substantial[]" and the continuance is "necessary to prevent substantial prejudice." *Id.* § 77-17-13(4)(a). Exclusion of expert testimony is an available remedy if the trial court finds that a party deliberately violated the Expert Notice Statute. *Id.* § 77-17-13(4)(b).

¶38　In contrast, Utah Rule of Evidence 702 governs the admissibility of evidence at trial. To be qualified as an expert witness, an individual must possess "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue." UTAH R. EVID. 702(a). The proponent of the expert testimony has the burden to make "a threshold showing that the principles or methods that are underlying in the testimony (1) are reliable, (2) are based upon sufficient facts or data, and (3) have been reliably applied to the facts." *Id.* 702(b). "The threshold showing

---

"amend the Rules of Procedure . . . adopted by the Supreme Court upon a vote of two-thirds of all members of both houses." UTAH CONST. art. VIII, § 4. However, the Expert Notice Statute was not enacted as an amendment to rule 16. Neither party has challenged the constitutionality of the procedural provisions in the Expert Notice Statute. But aside from any constitutional concerns, we note the practical problems that arise when "litigants and courts are faced with two sets of procedural rules running on parallel tracks and are required to make judgment calls about which rule should apply in a given circumstance." *State v. Bridgewaters*, 2020 UT 32, ¶ 24 n.9, --- P.3d ---. As we recently observed, "[T]he legislature could increase clarity for the bar and the bench if it were to enact rule changes through joint resolutions that specifically amend the relevant rule of procedure." *Id.*

. . . is satisfied if the underlying principles or methods . . . are generally accepted by the relevant expert community." *Id.* 702(c).

¶39    The Expert Notice Statute provides for the exclusion of expert testimony only when a party deliberately violates the Statute. Rule 702 provides for the exclusion of expert testimony when its foundational requirements are not met. Rule 702 is not concerned with notice. And nothing in rule 702 itself precludes the proponent of expert testimony from making the necessary threshold showing at trial, before the witness offers opinion testimony.[8]

---

[8] Of course, a party can move *in limine* before trial to obtain a ruling on the admissibility of an expert's testimony. And the proponent must show that the expert's evidence is admissible. A court can choose to receive the information necessary to make such a ruling in various ways, including, for example, by proffer, during a pretrial evidentiary hearing, or (if the court defers its ruling) through preliminary questioning of the witness at trial. UTAH R. EVID. 104(a), (c). A court can rule on such a motion or defer ruling—in part or in full—until it can be made in the context of trial. UTAH R. CRIM. P. 12(e).

Here, Peraza made an oral motion to exclude the forensic interviewer at the pretrial hearing. Based on the information before it, the trial court concluded the expert was qualified under rule 702, but deferred ruling on whether her substantive testimony would be admitted. Notably, Peraza did not make a substantive *in limine* motion specific to this expert witness. He did file a written motion *in limine* before trial, but it related to the child's therapist. In that motion, Peraza's focus was that the expert's testimony was inadmissible under Utah Rule of Evidence 403. And although Peraza asked the trial court at the pretrial hearing to apply his written motion opposing the child's therapist to the forensic interviewer, there was a substantive difference between the two witnesses. The State's notice for the child's therapist indicated that she would testify that "[the child's] symptoms and behavior are consistent with those of other children who report sexual abuse." But its notice for the forensic interviewer never stated that she would opine on the child's conduct. In fact, at trial, the forensic interviewer acknowledged that she had never met or interviewed the child. At the pretrial

(Continued . . .)

¶40  Here, the issue before the court of appeals was whether the testimony of the expert witness was admissible under rule 702, not whether the State violated the Expert Notice Statute. While Peraza did make an objection at the pretrial hearing under the Statute, the trial court took measures to remedy Peraza's concerns. The trial court asked the State to pare down the number of listed articles and provide them to Peraza. And the State agreed to make its witness available to consult with Peraza and "answer any questions." And on appeal, Peraza has not challenged the trial court's handling of this objection. He has argued only that the trial court should not have allowed the witness to testify under rule 702.

¶41  But we conclude the court of appeals conflated the distinct requirements and remedies of the Expert Notice Statute and rule 702 in its analysis. First, citing to the Expert Notice Statute, the court of appeals stated that "[a] party that intends to call an expert to testify at trial must demonstrate that the expert meets the requirements of rule 702." *State v. Peraza*, 2018 UT App 68, ¶ 28, 427 P.3d 276 (citing UTAH CODE § 77-17-13(1)(a)). While it is true that a proponent must make a threshold showing under rule 702, the court of appeals' citation to the Expert Notice Statute in support of this proposition was misplaced. Even though a proponent of expert testimony must abide by both, compliance with the Expert Notice Statute is not an element of admissibility under rule 702.

¶42  Second, in several paragraphs throughout its decision, the court of appeals specifically mentioned the Expert Notice Statute when it concluded that the trial court abused its discretion in admitting the expert's testimony. *See Peraza*, 2018 UT App 68, ¶¶ 2, 28, 30–31, 37, 49. For example, it stated that "[t]he State's notice did not comply with section 77-17-13, depriving the court of the information necessary to rule on the admissibility of Expert's testimony under rule 702." *Id.* ¶ 2; *see also id.* ¶ 37 ("[T]he district court exceeded its discretion in admitting Expert's testimony at trial because the State failed to comply with Utah Code section 77-17-13 in that it did not provide an expert report or detailed information with respect to Expert's testimony or the

---

hearing, Peraza told the trial court he would submit a written motion specific to the forensic interviewer, but he did not do so.

scientific basis on which she would rely. Without this information the requirements under rule 702 were not met . . . .").

¶43 This commingling of the requirements and remedies of the Expert Notice Statute and rule 702 was erroneous. While expert testimony may be excluded under the Expert Notice Statute if a party deliberately violates the Statute, there has been no such finding in this case. Indeed, the State's compliance with the Expert Notice Statute was not an issue on appeal.

¶44 And while expert testimony will be excluded when rule 702's foundational requirements are not met, the record shows that before the State elicited the expert's opinion at trial, it laid a foundation to satisfy rule 702's threshold requirements. During the pretrial hearing at which Peraza initially objected to the forensic interviewer testifying as an expert witness, the trial court reviewed the witness's "skill, experience, [and] education," and determined that she met the qualifications to testify as an expert under rule 702(a). At that time, the court reserved on ruling whether her substantive testimony would be admissible under rule 702(b), stating that it was uncertain what the testimony would be but that it would consider objections at trial.

¶45 At trial, the State called the forensic interviewer to testify during its rebuttal. It laid a foundation regarding her education, experience, and specialized training, which Peraza has never challenged. Relevant here, the State also asked the forensic interviewer whether the list of articles attached to her curriculum vitae contained "areas [about which she] felt [her] training and experience allowed [her] to testify as an expert." Specifically, the State asked whether she was qualified to testify to "[p]artial gradual disclosure of sexual abuse, age and timing of disclosure, reasons children delay disclosure, reasons children disclose, reluctant disclosures and avoidant children in forensic interviews, memory of traumatic events, difficulties with identifying dates of abuse, among other things" as well as "sexual behavior in abused and non-abused children, process of victimization, rapport, false allegations, recantations, fantasy, [and] bizarre disclosures." The expert witness confirmed that she had read research articles on those topics.

¶46 The State followed up, asking, "Are those things . . . that you believe were generally accepted . . . within your field as being sources that were reliable sources of research?" The witness confirmed that the articles were published in peer-reviewed

journals, which she explained meant that the peers within the author's academic community "review [the article] . . . to make sure that it's accurate, and that it's something that they feel like that they agree with, and that it represents the field." Only after laying this foundation did the State proceed to elicit expert opinion testimony from the witness. Notably, Peraza did not object under rule 702(b) to the substance of the witness's testimony at any time during trial.

¶47   The court of appeals appears not to have considered this trial testimony in its 702 analysis. It looked only to the information in the State's pretrial notice. And it concluded that the notice did not contain enough information to meet the threshold requirements of rule 702, so the State had violated the Expert Notice Statute and the trial court exceeded its discretion in admitting the testimony.

¶48   Peraza argues that this was not a conflation of the Expert Notice Statute and rule 702, and that it was proper to consider only the information in the State's pretrial notice in assessing the admissibility of the expert's testimony. Peraza argues that the trial court made a definitive ruling to admit the expert at the pretrial hearing, and at that time it had only the State's notice before it. So the trial court's ruling was predicated only on that information, and this is why the court of appeals referenced the expert notice requirements in connection with its 702 analysis. Peraza argues that it was an abuse of discretion for the trial court to admit the expert based on the information it had before it at the pretrial conference.

¶49   But the factual premise of Peraza's argument is incorrect. While the trial court did conclude at the pretrial hearing that the expert was qualified under rule 702(a) based on her curriculum vitae, it reserved its ruling on the helpfulness and reliability of her substantive testimony under rules 702(a) and (b). At the pretrial hearing, the State explained that it did not know what the substance of the expert's testimony would be, because she would be called only as a rebuttal witness. Both parties recognized that the court was reserving on that issue. The State noted that it would not lose any money on travel expenses if the court was "going to reserve on that" because the expert was local. Peraza asked whether he could at least "get an electronic copy of all the

reports that [the expert would be] relying on as authority" "[i]n light of the [court] . . . reserving [on] the expert testifying or not."

¶50   At trial, the witness did not offer an opinion until after the State had elicited answers to preliminary questions sufficient to satisfy rule 702's threshold requirements. And Peraza raised no objection on that basis. Viewing the forensic interviewer's testimony in context, it was admissible under rule 702. The court of appeals incorrectly imported the requirements of the Expert Notice Statute into its 702 analysis.

## II. MOTION FOR A CONTINUANCE

¶51   The court of appeals held that the trial court erred when it denied Peraza's motion for a continuance. The court of appeals premised its analysis on a conclusion that Peraza had requested the continuance pursuant to the Expert Notice Statute. Based on that conclusion, it shifted the burden to the State to prove that Peraza was not prejudiced by the erroneous denial. The State does not contest the court of appeals' determination that the denial of the continuance was error, but it argues that the court of appeals erred in requiring the State to disprove prejudice. We agree.

¶52   The court of appeals' analysis on this point was based on the premise that the State violated the Expert Notice Statute, and that Peraza requested the continuance pursuant to that statute. As discussed above, the court of appeals concluded in its assessment of Peraza's rule 702 argument that the State violated the Expert Notice Statute. *State v. Peraza*, 2018 UT App 68, ¶¶ 31, 37, 49, 427 P.3d 276; *see supra* ¶¶ 40–50. And in analyzing Peraza's argument that the trial court erred in denying his motion for a continuance, the court of appeals presumed that Peraza requested the continuance as a result of the State's violation. *Id.* ¶ 45.

¶53   After determining that the trial court's denial of Peraza's request was erroneous, the court of appeals required the State to prove that Peraza had not been prejudiced by the error. *Id.* ¶¶ 44–48. In cases involving a violation of the Expert Notice Statute, the court of appeals has shifted the burden to the State to prove that the defendant was not prejudiced. The court of appeals' cases reference our rationale in *State v. Knight*. 734 P.2d 913, 921 (Utah 1987). In *Knight*, the prosecution violated its discovery duty by failing to turn over certain inculpatory evidence. *See id.* at 914–16. We recognized that "when . . . the error consists of the prosecution's failure to provide a defendant with inculpatory evidence, the record does not provide much assistance in

discovering the nature or magnitude of the resulting prejudice to the defense." *Id.* at 920. Accordingly, we held that "[b]ecause of the difficulties posed by the record's silence in cases involving a wrongful failure to disclose inculpatory evidence, it seems appropriate in such instances to place the burden on the State to persuade a court that the error did not unfairly prejudice the defense." *Id.* at 921. The defendant must only "make a credible argument that the prosecutor's errors have impaired the defense." *Id.* Then "it is up to the State to persuade the court that there is no reasonable likelihood that absent the error, the outcome of the trial would have been more favorable for the defendant." *Id.*

¶54 The court of appeals has extended this holding to cases in which the state has violated the Expert Notice Statute. *See State v. Arellano*, 964 P.2d 1167, 1171 (Utah Ct. App. 1998); *see also State v. Tolano*, 2001 UT App 37, ¶¶ 14–15, 19 P.3d 400. And it applied this precedent here to require the State to prove Peraza was not prejudiced by the trial court's erroneous denial of his request for a continuance. *Peraza*, 2018 UT App 68, ¶¶ 44–48. We conclude this was error for two reasons.

¶55 First, Peraza acknowledges that he has not argued on appeal that his request for a continuance was based on the Expert Notice Statute. Accordingly, Peraza has waived any such argument.

¶56 Second, we find the position Peraza has taken on appeal to be consistent with the trial record. The record reflects that Peraza did not request the continuance under the Expert Notice Statute. Rather, he asked for a continuance to secure his own expert witness to discuss the potential impact of the child's therapy on her statements and testimony. During the emergency telephone conference, counsel for Peraza stated that, as a result of his discussion with the Salt Lake Legal Defender's director of mental health and social work, he learned for the first time that the therapy techniques the child's therapist had used "could give grounds for the recantation of the recantation, and also . . . might have led to the allegations becoming much more violent and much more pronounced as the years have gone on" and "may have led to possible contamination of the [child's] testimony." Counsel requested the continuance to acquire his own expert witness to review the child's therapy records and determine whether they may "give a foundation for the defense." Counsel

did not invoke the Expert Notice Statute or argue that he needed more time to prepare for the State's expert.

¶57   Accordingly, the court of appeals erred when it applied its precedent involving the Expert Notice Statute to assess whether Peraza was prejudiced by the denial of the continuance.[9] The Expert Notice Statute was not in play.

¶58   In general, when a party unsuccessfully requests a continuance to procure a witness, based not on a particular statute or rule but pursuant to the court's inherent authority to manage the case, the movant must prove prejudice on appeal. *See Mackin v. State*, 2016 UT 47, ¶¶ 33–34, 37, 387 P.3d 986. We will not reverse the trial court's decision to grant or deny a continuance "absent a clear abuse of that discretion." *Id.* ¶ 33 (citation omitted). A trial court "abuses its discretion when it denies a continuance and the resulting prejudice affects the substantial rights of the defendant, such that a review of the record persuades the court that without the error there was a reasonable likelihood

---

[9] The State argues that the court of appeals' extension of our holding in *Knight* to cases involving the Expert Notice Statute is contrary to the language of the Statute. *See State v. Arellano*, 964 P.2d 1167, 1171 (Utah Ct. App. 1998). We need not resolve this argument here because we have concluded that Peraza did not request the continuance under the Expert Notice Statute. But we acknowledge some of the problems the State highlights. The Statute states in relevant part that, "[i]f the defendant or the prosecution fails to substantially comply with the requirements of this section, the opposing party shall, if necessary to prevent substantial prejudice, be entitled to a continuance of the trial or hearing sufficient to allow preparation to meet the testimony." UTAH CODE § 77-17-13(4)(a). We have stated that "the *if* clause expresses a condition." *State v. Wadsworth*, 2017 UT 20, ¶¶ 5, 5 n.4, 393 P.3d 338. Consequently, the moving party bears the burden of showing that the condition is met. With respect to the Expert Notice Statute, that means showing both that the proponent of the expert testimony has failed to substantially comply with the Statute, and that a continuance of the trial is "necessary to prevent substantial prejudice." To shift the burden of proving prejudice to the proponent of the testimony, at the trial level or on appeal, may arguably run counter to the language of the statute.

of a more favorable result for the defendant." *Id.* (citation omitted) (internal quotation marks omitted).

¶59   When a defendant moves for a continuance under the common law, it is the defendant's burden to prove that a denial of the motion would be prejudicial. *See id.* Here, it was Peraza's burden to prove prejudice.

¶60   Accordingly, we reverse the court of appeals' ruling and remand for that court to consider under the correct legal standard whether the trial court's erroneous denial prejudiced Peraza.[10]

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

¶61   Peraza also argues that his counsel was ineffective. Recognizing that the record is insufficient to make this determination, he asks us to remand to the trial court under Utah Rule of Appellate Procedure 23B. However, we did not grant certiorari on this question. And while we can affirm on alternative grounds that are apparent on the record, the basis for this relief is not apparent on the record. Further, we must remand to the court of appeals on other remaining issues. Accordingly, we decline to address whether counsel was ineffective and leave that determination to the court of appeals on remand.

### CONCLUSION

¶62   We conclude that the court of appeals' rule 702 analysis was erroneous. The State's expert testimony was admissible. Further, the court of appeals erred in requiring the State to prove that Peraza was not prejudiced by the trial court's denial of his motion for a continuance.

¶63   We reverse the court of appeals' decision with regard to the expert witness. And we remand to the court of appeals to determine whether Peraza established that he was prejudiced by the trial court's denial of his motion for a continuance and address any other remaining claims.

───────────────

[10] We remand this issue back to the court of appeals in response to the parties' request that we do so.